## MARYLAND TOBACCO GROWERS' ASSOCIATION *v.* MARYLAND TOBACCO AUTHORITY

[No. 30, September Term, 1972.]

*Decided November 14, 1972.*

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William J. Boehm* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Howard County where Judge James Macgill, in an administrative appeal proceeding, sustained the refusal of the State Tobacco Authority, appellee, to grant the Maryland Tobacco Growers' Association, appellant, an increase in its daily sales quota on the loose leaf tobacco market for

the selling season 1970. This daily sales quota was purportedly devised by the Authority pursuant to powers delegated to it by the Legislature in 1947 under Article 48, sections 55-69, of the Code of Maryland (1957, 1971 Repl. Vol.). The first time the formula was used to regulate the loose leaf market was for the 1965 selling season. Here, appellant apparently does not challenge the right of the Authority to promulgate rules and regulations but only questions the formula by which the quota was calculated.

The appellant was incorporated in 1906 as a farmers' cooperative marketing agency and until 1969 it represented its members in the sale of their tobacco exclusively on the hogshead market at the State-owned warehouse in Baltimore City. The hogshead market is operated on a year round basis with the tobacco being sold in large barrels or casks via sealed bids based on samples obtained under supervision of a State agent. Once a hogshead is sold, no further processing or repacking is required before shipment to the purchaser. Because of the impending demolition of the State owned warehouse under the plans to redevelop the inner harbor area of Baltimore City and with the persistent decline in the popularity of the hogshead method of selling tobacco, appellant purchased, in 1969, all the capital stock of the Triangle Tobacco Warehouse, Inc., with its building located in Lothian, Maryland. Triangle, for a number of years, had operated as a tobacco selling agency using what is known as the loose leaf method of sale. Tobacco on the loose leaf market is sold in baskets at daily auctions in a number of private warehouses during a relatively short selling season. Tobacco purchased in this manner requires repacking before shipment to the purchaser. This is done by independent firms located in the general vicinity of the markets. The Maryland Tobacco Growers' Association, through its solely owned subsidiary, Triangle, thus entered the loose leaf market and acquired Triangle's daily selling quota as established by the Tobacco Authority.

The controversy before us arose when, after purchasing Triangle, the appellant attempted to obtain an increase in the daily sales quota allotted to it for the 1970 selling season. The Association contended that it was entitled to this increase because the formula used by the Authority to calculate the quotas failed to credit appellant with its prior sales experience on the hogshead market. The formula, as promulgated by the appellee, gave a percentage share of the market to each of the eight licensed auction houses of this State according to their tobacco sales performance on the loose leaf market over the preceding four years. The formula was calculated by attributing $\frac{2}{3}$ value to the respective shares of the market each agency had sold in the three years prior to the immediate past season and $\frac{1}{3}$ to the share the agency had sold in the immediate past season. Before each selling season new quotas were calculated because the immediate past year's sales were considered and the sales for the oldest year previously taken into account were dropped.

The quotas under this formula, therefore, were modified and adopted annually and the rules and regulations of the Authority which pertained to the marketing of Maryland tobacco likewise changed each year. In other words, all of the rules of appellee, including the sales quotas, were specifically promulgated to be effective for just one year and to regulate just that year's selling season.[1] The question now before us is the validity of the quotas which purportedly were established for the 1970 selling season. Appellant claims that these wrongfully failed to give it credit for its hogshead experience. However, a careful examination of the regulations promulgated for that year discloses that no quota information or rules purporting to regulate the market under a formula similar to those used in the years 1965-67 were adopted and filed with the Clerk of the Court of Ap-

---

1. The validity of the regulations for the 1967 selling season was approved by the Attorney General. See 52 *Op. Atty. Gen.* 473 (1967).

peals.[2] In fact, there was no attempt to regulate the number of pounds passing through the market daily. Without this filing, we conclude that no effective regulation under such a formula ·existed for that year. This determination is dictated by the language of Article 41, section 9 of the Code (1957, 1971 Repl. Vol.). That law has existed since 1943 and, though amended a number of times to add places where filing must be made, has always required filing with the Clerk of the Court of Appeals. Section 9 specifically mandates that:

> "Prior to the adoption of any rule or regulation by an officer or department of the executive branch of the State of Maryland under any rule-making power granted by the General Assembly of Maryland, the said rule or regulation shall be submitted to the Attorney General of Maryland for approval as to its legality. Every officer, department, board, commission, bureau and similar agency of the State government other than those within the Legislative and Judiciary Departments who has power to make, adopt or enforce rules and regulations shall file copies thereof with the Clerk of the Court of Appeals, with the Secretary of State, with the State Library, with each of the libraries of the respective circuit courts of the several counties and with the Supreme Bench of Baltimore City, and with the State Department of Legislative Reference. *No rule or regulation hereafter made, promulgated or adopted shall be effective until after compliance with this section. . . .*" (Emphasis added.)

Further, section 246 of the same Article states:

> "(a) Each agency shall comply with the pro-

---

2. Though rules which would effectively regulate the market in other respects were filed, nothing contained therein created any daily sales quotas. Although of no significance in this case, we note that no rules or regulations of any description were filed with the Clerk of this Court applicable to the 1972 selling season.

visions of § 9 of this article, and any amendments thereto. Each agency shall file forthwith with the Clerk of the Court of Appeals, with the Secretary of State, and with the State Library, with each of the libraries of the respective circuit courts of the several counties and the Supreme Bench of Baltimore City, and with the Department of Legislative Reference certified copies of all rules now in effect. The Secretary of State shall keep a permanent register of such rules open to public inspection.

(b) *Each rule hereafter adopted shall become effective upon filing,* unless a later date is required by statute or specified in the rule." (Emphasis added.)

It is, therefore, clear that any purported regulation of daily sales quota in the year under challenge here was ineffective and inoperative. Since selling was permitted without restriction in 1970, it is apparent that there exists no established quota which can be increased.

Assuming, *arguendo,* that the regulations were effective to impose quotas in 1970, we would dismiss this appeal as moot. This is so because even if we were to decide that the Association was entitled to credit for its hogshead experience, the selling season for 1970 has come and gone and nothing this Court could do now could alter the quotas for that year. Furthermore, if we were to decide that credit should be given this year and in future years we have found nothing in the record to indicate what effect addition of hogshead sales would make on the quotas. Parenthetically, we note that there is evidence in the record indicating that there has been such a decline in the use of the hogshead method to market tobacco, even though a new State warehouse has been constructed in Cheltenham, Maryland, that giving appellant credit for such experience would now make no significant difference in the quotas. This Court has consistently held that when the chronology of a case makes it apparent that nothing we could do could undo or

remedy that which has already occurred, except under the most extraordinary circumstances requiring a decision in the public interest, the case must be dismissed as moot. We do not sit to give opinions on abstract propositions and we detect none of the imperative and manifest requirements necessary to justify a departure from the normal rule against deciding moot cases. *See Area Dev. Corp. v. Free State Plaza*, 254 Md. 269, 254 A. 2d 355 (1969) ; *State v. Sheridan*, 248 Md. 320, 236 A. 2d 18 (1967) ; *Lloyd v. Supervisors of Elections*, 206 Md. 36, 111 A. 2d 379 (1954). It would be an act of futility, a useless gesture of no effect whatsoever, to consider this appeal. In these circumstances we think it manifest that the case is now moot and could be dismissed for that reason. *State v. Ficker*, 266 Md. 500, 295 A. 2d 231 (1972). However, as previously indicated, this appeal is decided on other grounds.

> *Order of the Circuit Court for Howard County vacated and appeal to that court from the decision of the State Tobacco Authority is dismissed.*
>
> *Costs in this Court and in the circuit court to be paid by appellant.*