## JOHN J. BISHOP, JR. ET AL. *v.* GOVERNOR OF MARYLAND

[No. 81, September Term, 1977.]

*Decided December 7, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*John J. Bishop, Jr.,* with whom was *H. Gregory Skidmore* on the brief, for appellants.

*Carl E. Eastwick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *George A. Nilson, Deputy Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. SMITH, J., dissents and filed a dissenting opinion at page 526 *infra.*

The Constitution of Maryland, Article III, § 52 (5a) mandates that the Governor of Maryland submit an annual budget and Budget Bill to the General Assembly containing "the total of all proposed appropriations and ... the total of all estimated revenues available to pay the appropriations, and the figure for total proposed appropriations shall not exceed the figure for total estimated revenues." The section requires that the Budget Bill, as enacted, shall also be balanced, *i.e.,* that "the figure for total estimated revenues always shall be equal to or to exceed the figure for total appropriations."

On January 21, 1976, the Governor submitted a budget and Budget Bill to the General Assembly in the amount of $3.6 billion for the fiscal year ending June 30, 1977. Included within it were estimated revenues of $74 million which would accrue to the State if during the 1976 legislative session the General Assembly enacted two lottery-related statutes proposed by the Governor. Also included were estimated revenues of $21 million which would become available to the State if the Congress of the United States extended the

Federal Revenue Sharing program beyond its scheduled expiration date of December 31, 1976. None of the appropriations requested in the Budget Bill were contingent upon the passage of the proposed revenue-producing state or federal legislation. By an opinion dated February 23, 1976, the Attorney General of Maryland found no constitutional infirmity in the inclusion of these estimated revenues in the budget.[1] The Budget Bill was finally passed by the General Assembly on April 12, 1976. The proposed state legislation designed to produce the estimated revenues of $74 million was enacted by the General Assembly and signed into law by the Governor on May 4, 1976.

On July 26, 1976, the appellants, taxpayers and certain members of the General Assembly, sought a declaratory judgment that the inclusion of the contingent revenue sources in the Budget Bill, both as submitted and as finally enacted, violated the "balanced" budget requirements of § 52 (5a) of Article III of the Maryland Constitution. Specifically, it was alleged that the estimated revenues in question were "contingent revenue figures in that they require legislative approval as a condition precedent to their becoming [within the contemplation of § 52 (5a)] 'estimated revenues available to pay the appropriations' contained in the budget"; and that "Since these revenue figures are contingent revenues and not 'estimated revenues available to pay the appropriations' the Budget submitted by the Governor was not balanced."

The case was heard on January 21, 1977, by the Circuit Court for Anne Arundel County (Beardmore, J.) on cross-motions for summary judgment. By an order filed on February 15, 1977, the court concluded that as long as the total proposed appropriations did not exceed the total estimated revenues, including revenues contingent upon the enactment of state or federal legislation, § 52 (5a) was not violated. An appeal was timely entered; we granted certiorari prior to decision in the case by the Court of Special Appeals. *See* Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-201.

---

1. 61 Op. Att'y Gen. 43 (1976).

The appellants argue that it is the purpose of § 52 (5a) to avoid budget deficits and that consequently estimated revenues must actually be "available" at the time they are included in the budget by the Governor. They maintain that the constitutional provision cannot be interpreted to permit the Governor to use his intuition or political wisdom to balance the budget, and that to afford the word "available," as used in § 52 (5a), a subjective, rather than an objective denotation, subjects the executive budget system to the very abuse that it was established to avoid. Appellants limit their constitutional attack on appeal to the estimated revenues included in the budget which were contingent upon the passage of the federal legislation.

The legislation extending the Federal Revenue Sharing program beyond December 31, 1976, upon which the Governor relied in submitting his estimated revenue figure of $21 million was enacted by the Congress of the United States and approved by the President on October 13, 1976. *See* State and Local Fiscal Assistance Amendments of 1976, Pub. L. No. 94-488, 90 Stat. 2341. Hence, the revenues estimated by the Governor, both state and federal totaling $95 million, which he included in his budget were in fact realized well before the Circuit Court for Anne Arundel County entered its declaratory decree.

It is, of course, well established that the existence of a justiciable controversy is a prerequisite to the maintenance of a declaratory judgment action. *Harford County v. Schultz,* 280 Md. 77, 371 A. 2d 428 (1977); *Pr. George's Co. v. Bd. of Trustees,* 269 Md. 9, 304 A. 2d 228 (1973). Time and again, we have said that appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision may be dismissed as a matter of course. *State v. Ficker,* 266 Md. 500, 295 A. 2d 231 (1972); *Potts v. Governor,* 255 Md. 445, 258 A. 2d 180 (1969); *Washburne v. Hoffman, Etc.,* 242 Md. 519, 219 A. 2d 826 (1966). We recently observed in *Hamilton v. McAuliffe,* 277 Md. 336, 353 A. 2d 634 (1976), that the declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise or where a declaration

would not serve a useful purpose in terminating a controversy.

No live controversy existed between the parties at the time the case was heard or decided by the Circuit Court for Anne Arundel County; the federal and state legislation upon which the estimated revenues depended had been enacted, and no real issue as to the constitutionality of the budget under § 52 (5a) for the fiscal year ending June 30, 1977 was any longer involved. Moreover, the 1977 fiscal year budget has now expired and as to it no actual controversy can exist. In these circumstances, no useful declaration could be made; indeed, it would be an act of futility, a useless gesture of no effect whatsoever, to consider the appeal. *See Md. Tobacco Grow. v. Md. Tob. Auth.,* 267 Md. 20, 296 A. 2d 578 (1972).

We can, of course, give an opinion in a justiciable declaratory judgment action, even though moot, where extraordinary circumstances exist, such as where there is an urgently needed determination affecting future governmental conduct in which the public concern is both imperative and manifest. *See Reyes v. Prince George's County,* 281 Md. 279, 380 A. 2d 12 (1977). That case involved a matter of imperative and manifest public concern where, at the time the case was before us, an actual controversy did exist, and there was an urgent need for a judicial determination of the legality of a governmental bond issue; our decision in that case effectively adjudicated the merits of the litigation. Unlike *Reyes,* the chronology of the present case indicates that nothing that we could do could undo or remedy that which has already occurred. It is beyond our power to make a decision in this case which will bind any of the parties to it. And while the issue raised in the case is undeniably one of considerable public importance, it may never recur, but if it does, there should be no difficulty in having it passed upon as a live issue. *Compare Lloyd v. Supervisors of Elections,* 206 Md. 36, 111 A. 2d 379 (1954). Moreover, the views of the Court on the sensitive questions raised in the case are not presently immediately pertinent,

and no imperative and manifest public need exists for a decision at this time.

> *Appeal dismissed; appellants to pay costs.*

*Smith, J., dissenting:*

I dissent because I believe we should decide the very important matter raised in this appeal, an issue which I regard as vital to the future fiscal well-being of this State. However, I agree that this case is moot because the controversy concerns the budget for the fiscal year beginning July 1, 1976, which fiscal year has now ended.

I hope a declaratory judgment action will be instituted forthwith if any Governor of Maryland again sends a budget to the General Assembly subject to attack on a basis similar to the issue raised here. With the research done in this case and the cooperation of the parties, it is possible that a final appellate decision could be rendered prior to the deadline for the adoption of a budget. The courts would then be dealing with a really live controversy. The Congress did finally enact legislation which had the effect of supplying the money counted upon in the budget here under attack. That enactment did not come, however, until some months after the beginning of the fiscal year and a good eight months after the submission of the budget. Prompt action to secure an adjudication of the matter would not present the temptation to decide the question of whether revenues were "available" within the meaning of the Maryland Constitution upon the basis of that which ultimately took place rather than upon the basis of the factual situation existing at the time of the submission of the budget. I am not to be understood by this comment as criticizing the plaintiffs here since there was an indication at the argument before us that their reason for not pushing for an earlier hearing was to accommodate what was conceived by them and the Attorney General to be the best interest of the State.

There have been a number of instances within the last 20 or 25 years in which Governors of Maryland in order to

achieve a balanced budget have resorted to some ingenious bookkeeping measures such as a shift in the calculated time for receipt of certain revenues. Accordingly, I believe it possible that the problem represented in this case may well recur. For that reason I regard this case as one of such public importance that we should consider the matter for the purpose of providing guidance for future conduct in similar circumstances.

*Reyes v. Prince George's County,* 281 Md. 279, 380 A. 2d 12 (1977), was decided but four days prior to the argument in this case. In it Judge Digges referred for the Court to the statement in *Hammond v. Lancaster,* 194 Md. 462, 471-72, 71 A. 2d 474 (1950), relative to deciding moot or abstract questions, "or, in the absence of constitutional mandate, render[ing] advisory opinions." The Court said in *Reyes:*

> "We think that the constitutional limitations we have just described are those to which the Court in *Hammond* referred when it indicated that advisory opinions would not be rendered without constitutional mandate. It is apparent to us that those limitations are not applicable to prevent our decision in a moot case where the requisite extraordinary circumstances exist. . . . We are loath to conclude that, simply because a judgment of this Court can no longer affect the rights of the parties who have brought the dispute before us for adjudication, it is necessarily beyond the judicial function without regard to the public importance of the issues, the likelihood of recurrence, and other similar factors. Particularly where a controversy is live when appealed to this Court and the opposing positions are vigorously presented, so that the action is clearly suitable for resolution through the judicial process, in the absence of a clear constitutional prohibition, either express or reasonably implied, we decline to infer that it may never be judicially resolved. We emphasize, however, that we will exercise this authority only in rare instances which

demonstrate the most compelling of circumstances." (Footnotes omitted.) 281 Md. at 296-97.

In *Reyes* we laid down certain procedures to be followed when an "action involves the validity of a statute or governmental regulation having the force of statute, or an urgently needed determination affecting future governmental conduct, and in which the public's concern is both imperative and manifest" in order that such a case "not hereafter necessarily be dismissed as collusive by a court of this State . . . ." By footnote, after the reference to the public's concern as "both imperative and manifest," the Court said in *Reyes:*

"In this regard it may be helpful to recall the language of the Court in Lloyd v. Supervisors of Elections, 206 Md. 36, 43, 111 A. 2d 379, 382 (1954), where we noted circumstances under which the decision of issues moot as to the parties might be appropriate:

[T]he better considered and reasoned cases take the view that only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions. They hold that if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised

by a question which has become moot, particularly if all these factors concur with sufficient weight." *Id.* at 300 n. 18.

It is because I believe this case fits squarely within what we said in *Reyes* and what Judge Hammond said for our predecessors in *Lloyd* that I would consider this case upon its merits.

I am concerned lest revenue estimates based upon a *hope,* rather than an *actual belief* (there is a difference) may ultimately place the State in as precarious a financial position as it was when Governor Emerson C. Harrington appointed the Goodnow Commission more than 60 years ago.