286 Md. 324 (1979)
407 A.2d 749
ATTORNEY GENERAL OF THE STATE OF MARYLAND
v.
ANNE ARUNDEL COUNTY SCHOOL BUS CONTRACTORS ASSOCIATION, INC. ET AL.
[No. 12, September Term, 1978.]
Court of Appeals of Maryland.
Decided November 9, 1979.
Motion for reconsideration filed December 10, 1979.
Denied December 20, 1979.
*325 The cause was argued before MURPHY, C.J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ., and reargued before MURPHY, C.J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.
Charles O. Monk, II, Assistant Attorney General, with whom were George A. Nilson, Deputy Attorney General, Thomas M. Wilson, III and Michael F. Brockmeyer, Assistant Attorneys General on the brief, and Naomi F. Samet, Assistant Attorney General on supplemental brief, for appellant.
James J. Doyle, Jr., with whom were Mary R. Craig and Mareen L. Duvall, Jr., on the brief, and S. Ann Brobst and Sherbow, Shea & Doyle on supplemental brief, for appellees.
DAVIDSON, J., delivered the opinion of the Court. SMITH and ELDRIDGE, JJ., dissent. SMITH, J., filed a dissenting opinion at page 330 infra, in which ELDRIDGE, J., concurs.
Maryland Code (1978), § 5-201(c)(13) of the Education Article provides that the State shall pay for "the necessary costs of transporting students ... to public schools."[1] The State reimburses the counties for their costs according to a formula. 2 Md. Register 1314, 1482-83.[2] However, the counties may supplement the amount reimbursed. § 7-601 of *326 the Education Article. The total amount of reimbursement is determined annually.
Some counties own and operate school buses while others contract for essentially all of the needed buses and operators. See § 7-602 of the Education Article. While the Board of Education of Anne Arundel County (Board) owns some buses, it contracts for the great majority of its needed school bus services. Many of the school bus contractors belong to the Anne Arundel County School Bus Contractors Association, Inc. (Association), a trade association.
In February, 1975, the Association's request for a county rate supplement was stricken, for some unexplained reason, from the 1975-76 budget proposed by the Board. In September, 1975, the Association requested a $.06 per mile county rate supplement. Thereafter, the Association agreed to an audit which was completed in January, 1976. As a result of the audit, the Board included a $.06 per mile rate supplement in its proposed budget for the year 1976-77. Again, for some unexplained reason, this proposed county rate supplement was stricken. The Association learned of this deletion sometime before 30 March 1976.
At an Association meeting held on 30 March 1976, various members agreed that as of the close of school on 2 April 1976, they would stop driving if they did not obtain a rate supplement of $.06 per mile retroactive to 1 September 1975. On 31 March 1976, the Association's president informed the Supervisor of Transportation of that decision. On 1 April 1976, there was a meeting between the Association and the Board at which the Board asked the Association to put its demands in writing, and the Association complied. A further meeting was scheduled for 7 April 1976.
On 2 April 1976, in the Circuit Court for Anne Arundel County, the Board obtained an ex parte injunction restraining the appellees, the Association and certain of its members (Association), from refusing to drive. On 9 April 1976, this injunction was extended for 10 days. On 12 April 1976, the trial court permitted the appellant, the Attorney General of the State of Maryland (Attorney General), to intervene. On 13 April 1976, he filed a bill of complaint seeking a declaration *327 that the Association, by threatening to withhold services in order to obtain an agreed upon rate supplement, "engaged in an unlawful combination or conspiracy in unreasonable restraint of trade" in violation of the Maryland Antitrust Act, Md. Code (1975), § 11-204(a)(1) of the Commercial Law Article. In addition, the Attorney General sought an interlocutory injunction and a permanent injunction restraining the Association for a period of 10 years from further violations of the Antitrust Act, from itself withholding transportation services from the Board, and from inducing others to withhold such services. On 14 April 1976, the trial court, with the agreement and consent of the parties, issued an interlocutory injunction continuing the ex parte injunction of 2 April 1976 through 1 September 1976.
On 18 July 1977, the Attorney General filed a motion for summary judgment. On 8 September 1977, the Association filed a motion for summary judgment. On 12 December 1977, the trial court entered an order denying the Attorney General's motion and granting the Association's motion. We issued a writ of certiorari to the Court of Special Appeals before consideration by that Court. After argument and reargument, we find the case to be moot. We shall dismiss the appeal.
Generally, appellate courts do not decide academic or moot questions. A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide. State v. Ficker, 266 Md. 500, 506-07, 295 A.2d 231, 234-35 (1972); Lloyd v. Board of Supervisors of Elections, 206 Md. 36, 39, 111 A.2d 379, 380 (1954); State v. Haas, 188 Md. 63, 66, 51 A.2d 647, 648 (1947). See Bishop v. Governor of Md., 281 Md. 521, 524-25, 380 A.2d 220, 222-23 (1977). Accordingly, an injunction should not issue if the acts sought to be enjoined have been discontinued or abandoned. State v. Ficker, 266 Md. at 507, 295 A.2d at 235; United Bhd. of Carpenters v. United Slate Tile & Composition Roofers, 181 Md. 280, 282, 29 A.2d 839, 840 (1943).
Here the record shows that on 31 March 1976, the Association threatened to withhold transportation services. *328 That threat was never carried out. On 2 April 1976, an injunction was issued which, with the agreement and consent of the Association, was extended to 1 September 1976. During the effective period of the injunction, the Association neither threatened to stop services nor did it in fact stop services. Moreover, the record shows that the Association ultimately received and accepted a $.02 per mile supplement for the 1977-78 school year, thus terminating the controversy. There is no evidence to show that since the expiration of the injunction or the termination of the controversy, the Association either threatened to stop services or did in fact stop them. Thus, the record establishes that the activities which the Attorney General seeks to have enjoined have been discontinued. There is no existing controversy between the parties and no effective remedy the court can provide. Accordingly, the case is moot.
Of course, a court may decide a moot question where there is an imperative and manifest urgency to establish a rule of future conduct in matters of important public concern, which may frequently recur, and which, because of inherent time constraints, may not be able to be afforded complete appellate review. State v. Ficker, 266 Md. at 507, 295 A.2d at 235; Lloyd v. Board of Supervisors of Elections, 206 Md. at 43, 111 A.2d at 381. See Bishop v. Governor of Md., 281 Md. at 525, 380 A.2d at 223. Periods of two and three months have been held insufficient to afford complete appellate review, Sheehy v. Thomas, 155 Md. 688, 693, 142 A. 506, 507 (1928) (3 months); Close v. Southern Md. Agr. Ass'n, 134 Md. 629, 632, 108 A. 209, 210-11 (1919) (2 months), whereas periods of five and 12 months have been deemed sufficient for this purpose, Maryland Tobacco Growers' Ass'n v. Maryland Tobacco Authority, 267 Md. 20, 25-26, 296 A.2d 578, 580-81 (1972) (12 months); Lloyd v. Board of Supervisors of Elections, 206 Md. at 44, 111 A.2d at 382 (5 months).
While we recognize that this case involves a matter of important public concern, we are persuaded that there is no imperative or manifest urgency to establish a rule of future conduct. In the absence of any evidence to show that in the four years since the expiration of the injunction, the *329 Association has threatened to withhold services, or has in fact withheld them in order to obtain an agreed upon rate supplement, we can only conclude that similar activities and controversies between these parties are unlikely to recur.
In addition, there are no inherent time constraints which would necessarily prevent appellate review. There were five months between the Association's decision to withhold services on 30 March 1976 and the expiration of the interlocutory injunction on 1 September 1976. Thus, even should a controversy with the same chronology as the present one occur in the future, there would be sufficient time for appellate review. Maryland Tobacco Growers' Ass'n v. Maryland Tobacco Authority, 267 Md. at 25-26, 296 A.2d at 580-81; Lloyd v. Board of Supervisors of Elections, 206 Md. at 44, 111 A.2d at 382. Moreover, because the rate of reimbursement for providing transportation services is established annually, and is effective for one year, it is possible that, under different circumstances, similar activities and controversies would arise even earlier.
In this case, a peculiar combination of circumstances prevented the completion of appellate review. For two successive years, rate supplements which had been included in the Board's budget were, for unexplained reasons, deleted as late as February. It was not until sometime in March, 1976 that the Association learned that it was not to receive its anticipated rate supplement. Moreover, approximately 20 months elapsed from the time the Attorney General filed his complaint on 13 April 1976 until the trial court ruled on the cross motions for summary judgment on 12 December 1977. The Attorney General on 13 and 14 April 1976 did in fact request that the time for filing an answer and for notice of an oral deposition, respectively, be shortened. Yet, although the Attorney General knew on 14 April 1976 that the interlocutory injunction to which he had agreed and consented would expire on 1 September 1976, he made no other attempt throughout this 20 month period to expedite this case; neither did he attempt to expedite the proceedings in this Court. It is unlikely that a set of circumstances similar to those which prevented completion of appellate review in this case would *330 in the future coalesce to prevent completion of appellate review of other similar activities and controversies should they recur.
None of the considerations which justify this Court in deciding a moot case is present. Under the circumstances here, we decline to decide this moot case. Md. Rule 835(a)(6).
Judgment of the Circuit Court for Anne Arundel County vacated and case remanded to that court with instructions to dismiss as moot.
Costs to be paid by appellant.
Smith, J., dissenting:
I respectfully dissent on two grounds. First of all, I do not believe the case is moot. Secondly, if it is moot, then I believe this to be the type of controversy which under our cases we should decide because of its future importance.
The majority opinion refers to the fact that "the record shows that the Association ultimately received and accepted a $.02 per mile supplement for the 1977-78 school year, thus terminating the controversy." Although an affidavit on September 7, 1977, of the president of the School Bus Contractors Association indicates that an additional $.02 per mile from Anne Arundel County had "in fact been provided for the 1977-1978 school year," he did not indicate nor has anyone else said that this terminated the controversy. The demand here was for $.06 per mile, not $.02. Accordingly, I am unable to comprehend how such a small increase would end the dispute, particularly in the light of what has happened to gasoline prices.
The majority opinion states that the relief sought by the Attorney General included "a permanent injunction restraining the Association for a period of 10 years from further violations of the Antitrust Act, from itself withholding transportation services from the Board, and from inducing others to withhold such services." It is apparent that the majority has completely overlooked this fact when it *331 states that there is now "no effective remedy the court can provide" in this case. Maryland Code (1975) § 11-209, Commercial Law Article, authorizes the Attorney General to "institute proceedings in equity to prevent or restrain violations of [the antitrust provisions of] § 11-204," and a court which determines that "a violation has been committed" is authorized by that section to "[p]revent continuation or renewal of the violation in the future."
Black's Law Dictionary (5th ed. 1979) defines "moot":
Moot. A subject for argument; unsettled; undecided. A moot point is one not settled by judicial decisions.
A case is "moot" when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Leonhart v. McCormick, D.C.Pa., 395 F. Supp. 1073, 1076. Question is "moot" when it presents no actual controversy or where the issues have ceased to exist. Matter of Lawson's Estate, 41 Ill. App.3d 37, 353 N.E.2d 345, 347.
Generally, an action is considered "moot" when it no longer presents a justiciable controversy because issues involved have become academic or dead. Sigma Chi Fraternity v. Regents of University of Colo., D.C. Colo., 258 F. Supp. 515, 523. Case in which the matter in dispute has already been resolved and hence, one not entitled to judicial intervention unless the issue is a recurring one and likely to be raised again between the parties, Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1. [Id. at 909.]
In Hayman v. St. Martin's, 227 Md. 338, 343, 176 A.2d 772 (1962), Chief Judge Brune said for this Court, "[T]he doctrine of mootness applies to a situation in which past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect."
Certainly the case is no more moot now than it was on May 4 when we directed reargument with the parties requested *332 to address themselves to the question of whether "the conduct of the appellees [is] excepted from the coverage of the antitrust laws under the principles set forth in Eastern Rail. Pres. Conf. v. Noerr Motor Frgt., Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and similar cases."
The majority notes, "In the absence of any evidence to show that in the four years since the expiration of the injunction, the Association has threatened to withhold services, or has in fact withheld them in order to obtain an agreed upon rate supplement, we can only conclude that similar activities and controversies between these parties are unlikely to recur." Such activities and controversies between these particular parties may or may not recur. However, the majority ignores the fact that the public press reported relative to more than one county other than Anne Arundel when schools reopened in September of this year that bus operators and associations similar to that here before the Court were debating whether to withhold school bus services until more money was paid. Under the normal budgetary process appropriations for school transportation at the State level, from whence comes virtually all of such funds, were made a number of months in advance of the beginning of the current fiscal year on July 1. County tax levies were struck prior to July 1. Thus any decision at the county level relative to supplementation was made in advance of July 1 and probably made before the full impact of current increased gasoline costs was comprehended.
The economic forces which produced the current controversy back in 1976 are even more pronounced today so that "a $.02 per mile supplement" certainly will not eliminate such a controversy. This is well illustrated by the fact that the records maintained by Maryland AAA indicate that at the end of March 1976, immediately prior to the filing of the bill of complaint in this cause, the average price paid in Maryland for "regular" gasoline was 58.8 cents per gallon. At the end *333 of April 1979, immediately prior to our order for reargument in this case, the average price was 77 cents per gallon. At the end of September 1979 the average price was 98.6 cents per gallon. It seems to me that it is foolhardy to believe that this or a similar controversy will not again come to the surface.
It is instructive to note what Judge Hammond said for the Court in Lloyd v. Supervisors of Elections, 206 Md. 36, 111 A.2d 379 (1954), quoted for the Court by Judge Digges in Reyes v. Prince George's County, 281 Md. 279, 300, 380 A.2d 12 (1977):
[T]he better considered and reasoned cases take the view that only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions. They hold that if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight. [Id. at 43.]
This case certainly "involve[s] a relationship between government and its citizens...." Moreover, "upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision...."
The majority would do well to reflect upon what Judge Digges said for the Court in Reyes:
We are loath to conclude that, simply because a judgment of this Court can no longer affect the rights of the parties who have brought the dispute *334 before us for adjudication, it is necessarily beyond the judicial function without regard to the public importance of the issues, the likelihood of recurrence, and other similar factors. Particularly where a controversy is live when appealed to this Court and the opposing positions are vigorously presented, so that the action is clearly suitable for resolution through the judicial process, in the absence of a clear constitutional prohibition, either express or reasonably implied, we decline to infer that it may never be judicially resolved. [Id. 281 Md. at 297.]
There are important legal issues here which should be resolved. The trial judge dismissed the complaint on the theory that the association here was a labor union and thus exempt from the statute. On our own motion we asked the parties to brief and argue whether or not another exception to the antitrust laws might be applicable. There are differing views on both of these subjects. If there were a violation here, then I am of the view that the public is entitled to have us so determine in order that it may be protected in the future at a time when we are faced with sharply increasing gasoline prices, as illustrated by the figures I have set forth. On the other hand, if this statute does not prohibit the activities concerning which complaint was here made, the defendants and persons similarly situated are entitled to be informed of that fact in order that they may take due notice thereof and govern themselves accordingly  and the General Assembly is entitled to know that fact because it may wish to enact legislation upon the subject. Our decision on the issues presented in this case could affect the rights of the parties to this proceeding and others similarly situated for many years into the future.
In summary, I do not believe this cause is moot, but if it is moot, then it presents the very type of issue which our cases indicate we should address.
Judge Eldridge authorizes me to say that he concurs in the views here expressed.
NOTES
[1] At the time of the events pertinent to this case, the provisions concerning school bus operations were codified in Md. Code (1957, 1969 Repl. Vol.), Art. 77. By the Acts of 1978, ch. 22, these provisions were placed in Md. Code (1978), titles 2, 5, and 7 of the Education Article.
[2] The State Board of Education's bylaws, rules, and regulations have the force and effect of law. § 2-205 (c) (2) of the Education Article.