970 A.2d 942

**Seth W. HAMOT and Andrew R. Siegel**

v.

**TELOS CORPORATION.**

**No. 1079, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 6, 2009.

Trevor J. Welch (Kasowitz, Benson, Torres & Friedman LLP, on the brief), New York City; (Lewis T. Stevens, Warner Stevens, LLP, Fort Worth, TX, Harry Levy, Shumaker Williams, PC, Towson; Leslie D. Hershfield, Schulman, Treem, Kaminkow & Golden PA, Baltimore), all on the brief, for Appellant.

Ava E. Lias–Booker (McGuire Woods LLP, on the brief), Baltimore; (Sean F. Murphy, McGuire Woods, LLP, McLean, VA; Bradley R. Kutrow, McGuire Woods LLP, Charlotte, NC;

Thomas M. Beshere, McGuire Woods LLP, Richmond, VA), all on the brief, for Appellee.

Panel: JAMES R. EYLER, WOODWARD, and ZARNOCH, JJ.

ZARNOCH, Judge.

In this interlocutory appeal of a time-conditioned preliminary injunction, we are asked to determine the propriety of a court order prohibiting appellants Seth W. Hamot and Andrew R. Siegel from making certain contacts or communications with the auditors of appellee Telos Corporation (Telos), including threatening future litigation. Because the preliminary injunction has expired by its own terms, and the specific factual premise for its issuance is no longer controlling, we conclude that the question of whether the preliminary injunction should have been issued is moot. In addition, because we find no applicable exception to the mootness doctrine, we will dismiss this appeal as moot without affecting any pending litigation or any final decision on the merits that may be reached.

## FACTS AND PROCEEDINGS

Telos is a Maryland corporation headquartered in Ashburn, Virginia that provides networking and security products and services primarily to the U.S. Department of Defense and other federal agencies. Hamot and Siegel are two members of Telos' board of directors nominated by Costa Brava Partnership, II (Costa Brava), which owns 16 percent of Telos' public preferred stock and in which the two directors are principals.

Claiming that Telos failed to make certain mandatory stock redemptions, Costa Brava filed a lawsuit in Maryland against Telos and in Virginia against the firm's former auditing firm.[1] In an apparently related action, Hamot and Siegel, in August

---

1. A more detailed description of this litigative thicket is unnecessary to resolve this appeal.

2007, filed suit against Telos in the Circuit Court for Baltimore City seeking access to certain corporate books and records.

In April 2008, Telos filed a counterclaim seeking preliminary and permanent injunctive relief against Hamot and Siegel.[2] The counterclaim alleged that Costa Brava "is a hedge fund that styles itself as a specialist in using 'complex litigation' to generate the investment returns that it believes it should receive," and that Telos "has been dealing with Costa Brava's incessant demands" for investment returns. Telos alleged that Hamot, Siegel, and Costa Brava "targeted" Telos' outside independent auditors to coerce them into reversing their accounting treatment of the redeemable preferred stock they owned and withdrawing earlier audit opinions—actions resulting in the resignation of two auditing firms. The counterclaim further stated:

> Telos needs audit opinions from an outside auditor in order to file its 2007 Form 10–K [with the Securities and Exchange Commission]. Now that two accounting firms have resigned in the last ten months as a direct result of communications, threats and lawsuits by Hamot, Siegel and Costa Brava, it will be virtually impossible for Telos to find a public accounting firm willing to act as the outside auditor for Telos unless this Court enjoins Hamot, Siegel and others working in concert with them to cease all communications with the company's outside auditors and any other actions designed to circumvent Telos' practices for communicating with outside auditors. . . .

In its prayer for relief, Telos sought the issuance of an unconditioned preliminary and permanent injunction to prevent Hamot and Siegel from making certain contacts or communications with past and future Telos auditors, including those seeking "directly or indirectly to pressure, coerce, manipulate or influence any auditor retained by Telos in the

---

2. The counterclaim alleged causes of action for tortious interference with contractual relations, tortious interference with economic or business relations, and breach of fiduciary duty.

performance of its audit work and review of Telos' financial statements."

On May 1, 2008, the circuit court entered an order preserving the status quo until a hearing on the preliminary injunction request. Three weeks later, Hamot and Siegel moved to dismiss the counterclaim, asserting among other things that their First Amendment right to petition the government for the redress of grievances would be infringed by the counterclaim's attempt to restrict their ability to threaten to sue Telos' auditors.[3] After limited discovery and an amendment to the counterclaim, the preliminary injunction case was heard on June 24, 2008. Evidence before the court at the preliminary injunction hearing consisted primarily of documents and Power Point clips of various depositions.[4]

On June 27, 2008, the circuit court granted Telos' request for a preliminary injunction, concluding, among other things, that it would likely succeed on the merits and would suffer irreparable harm if the preliminary injunction were not granted. A key finding of the court was that "Telos finds itself without an auditor and without the ability to produce audited financial statements for 2007" and that this would cause the firm to lose business, government contracts, and key employees. Thus, it ordered Hamot and Siegel to cease auditor contacts and communications "during the pendency of the litigation or until such time as Telos obtains audited financial statements for 2007 and files its 10–K with the SEC."[5] On

---

3. The motion was not heard until after the preliminary injunction issue was resolved. It was denied on July 24, 2008.

4. Expert testimony was anticipated. However, due in part to time constraints, none was presented at the hearing.

5. Specifically, the preliminary injunction ordered that:

   Hamot and Siegel cease, desist and refrain from any and all direct or indirect contact or communications (whether verbal, written or otherwise) with Goodman, Reznick, or any other former, current or future auditors of Telos Corporation, or with any agents or representatives of any such auditors, regarding the conduct herein prohibited, during the pendency of this litigation or until such time as Telos obtains audited financial statements for 2007 and files its 10–K with

July 25, 2008, Hamot and Siegel appealed the entry of the preliminary injunction. On August 15, 2008, their motion to stay enforcement of the preliminary injunction was denied by the circuit court.

The appeal was argued in November, 2008.[6] During oral argument, counsel for Telos advised that the firm's auditors

the SEC. The conduct prohibited by this Order specifically includes, but is not limited to, any communications, contacts or other conduct that either explicitly or implicitly: (1) seeks, requests or demands the withdrawal of, or otherwise attempts to urge the auditor to withdraw prior audit opinions for fiscal years 2004, 2005 or 2006; (2) seeks, requests, demands or attempts to urge the auditor to adopt a particular accounting treatment with respect to the classification of ERPS [Exchangable Redeemable Preferred Stock]; (3) seeks, requests, demands or attempts to urge the auditor to change the accounting treatment or classification of the ERPS; (4) threatens litigation, or suggests or indicates intent to initiate litigation against any Telos auditor with respect to the accounting treatment or classification of the ERPS; (5) seeks or is designed to interfere with the relationships between Telos and its former, current or future auditors; (6) seeks or is designed to compromise the independence of any Telos auditor; and (7) seeks or is designed to influence, coerce, intimidate or manipulate any Telos auditor into rendering materially misleading financial statement.

In addition, under the preliminary injunction:

Hamot and Siegel are prohibited from engaging in any contact, communications or other conduct prohibited by this Order acting either singly or in concert with others, including any entities that they control or through which they operate, including, but not limited to, Costa Brava, RRHCM and RRH. It also specifically prohibits any such actions or conduct undertaken through or in concert or collusion with other persons or entities, including, but not limited to, Wynnefield Partners Small Cap Value, L.P. ("Wynnefield"), Paul Berger or any other ERPS holders.

Finally, Telos was excused from the requirement of filing a bond in connection with the preliminary injunction.

6. In this Court, appellant framed the following issues:

1) Whether the preliminary injunction violates the Petition Clause, where it prohibits the directors and non-parties from threatening, initiating or prosecuting litigation in another jurisdiction against any Telos auditor relating to the accounting treatment of Telos' public preferred stock, even though a jury has already rendered a verdict against a Telos auditor on exactly such claims?

2) Whether the preliminary injunction should be vacated because, under the *Noerr–Pennington* doctrine, Telos' underlying counterclaims are premised on speech or conduct that is protected by the Petition

were in the process of concluding the audit of the Telos' 2007 financial statements and suggested the possibility that the appeal might soon be moot. Post-argument letters to the Court from Telos' counsel advised of the progress of the audit. On December 18, 2008, Telos informed the Court that the audit of the corporation's 2007 financial statements had been completed and its 2007 Form 10–K had been filed with the SEC.

As a result, this Court, on December 30, 2008, ordered the parties to file supplemental memoranda "addressing the issue of whether Appellee Telos Corporation's filing of a 2007 Form 10–K moots the above-captioned appeal, or whether the appeal remains justiciable, and, if so, under what legal theory."

## DISCUSSION

### A. Effectiveness of Remedy

The test for mootness is "whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy," *Adkins v. State*, 324 Md. 641, 646, 598 A.2d 194 (1991). Generally, when review is sought of an expired preliminary injunction, this test cannot be met. *See J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Commission*, 368 Md. 71, 96, 792 A.2d 288 (2002)("Because the injunction expired well prior to this case coming before us, the propriety of the injunction ordinarily would be a moot issue.").

Hamot and Siegel disagree. They contend that a controversy still exists between the parties and this Court can still fashion a remedy for them by ruling on their First Amendment claim. Appellants claim that "[s]uch a decision would preclude a re-issuance of the injunctive relief challenged here.

---

Clause and, therefore, have absolutely no possibility of success on the merits?

3) Whether the preliminary injunction should be vacated because Telos did not and cannot meet its burden to prove any, let alone all, of the requirements for a preliminary injunction?

Indeed, such a decision could—and indeed should—result in the outright dismissal of Telos' Counterclaim." These arguments miss the mark.

The only controversy before us is the propriety of a time-conditioned preliminary injunction, not whether appellants' motion to dismiss the counterclaim should have been denied or whether a permanent injunction should or should not issue. There is no effective relief this Court can provide on the narrow issue of whether the request for a preliminary injunction should have been granted.

The U.S. Supreme Court addressed an identical question in *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). There, a U.S. District Court issued a preliminary injunction requiring a university to pay for a deaf student's sign-language interpreter under the Rehabilitation Act of 1973, 29 U.S.C. § 794. By the time the case reached an appellate court, the university had complied with the injunction and paid for the interpreter, and the student had graduated. A Fifth Circuit panel held that neither the preliminary injunction nor the case itself was moot. However, the Supreme Court reversed, noting:

> The Court of Appeals correctly held that the case as a whole is not moot, since, as that court noted, it remains to be decided who should ultimately bear the cost of the interpreter. However, the issue before the Court of Appeals was not who should pay for the interpreter, but rather whether the District Court had abused its discretion in issuing a preliminary injunction requiring the University to pay for him. The two issues are significantly different, since whether the preliminary injunction should have issued depended on the balance of factors listed in *Canal Authority [of Florida v. Callaway*, 489 F.2d 567 (5th Cir., 1974)]*, while whether the University should ultimately bear the cost of the interpreter depends on a final resolution of the merits of Camenisch's case.

451 U.S. at 393, 101 S.Ct. 1830.

The lower court's decision was incorrect, the Court said, because:

[I]t improperly equates "likelihood of success" with "success," and what is more important, ... it ignores the significant procedural differences between preliminary and permanent injunctions.

* * *

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, ... and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.... In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.

*Id.* at 394–95, 101 S.Ct. 1830.

As a result, the Court articulated the following rule:

In short, where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy. Thus when the injunctive aspects of a case become moot on appeal of a preliminary injunction, any issue preserved by an injunction bond can generally not be resolved on appeal, but must be resolved in a trial on the merits.

*Id.* at 396, 101 S.Ct. 1830.[7]

As in *Camenisch,* the proceedings here "bear the marks of the haste characteristic of a request for a preliminary injunc-

---

7. In *Camenisch,* the student unsuccessfully argued that his posting of an injunction bond prevented mootness from occurring. Here, even that argument cannot be made, because no bond was posted.

tion." *Id.* at 398, 101 S.Ct. 1830. The June 24, 2008 hearing was not a trial. Rather, it featured deposition excerpts and documents. Anticipated expert testimony was not forthcoming. *See* p. 358, 970 A.2d 945, *supra.* Appellants devoted only five pages of their 38–page Memorandum of Law in Opposition to Motion for Preliminary Injunction against Counter–Defendants to their First Amendment / Petition Clause argument.[8] The circuit court discussed the First Amendment issue briefly and only in contingent terms—characteristics of the limited inquiry into the likelihood of prevailing on the merits.[9]

For these reasons, like the Supreme Court in *Camenisch,* we decline to transform our review of an expired preliminary injunction into a trial court-like final decision on the merits.[10] Thus, absent a showing of an applicable exception to the mootness doctrine, we would find this appeal to be moot.[11]

---

8. In contrast, in this Court, appellants devote more than twice as much space to this argument, with much of it aimed at the circuit court's opinion on the denial of their motion to dismiss—an issue not presently appealable.

9. Specifically, the circuit court said:

   [I]t is in the judgment of this Court questionable whether the alleged litigation threats against Telos' auditors are premised upon legitimate claims. If not, they would not enjoy the protection of the *Noerr–Pennington* Doctrine.

10. In *Matthews, supra,* 368 Md. at 96–98, 792 A.2d 288, the Court of Appeals did consider the propriety of an expired preliminary injunction that the government sought to prevent a landowner from engaging in construction on his property until it was condemned. In that case, however, because the condemnation action had concluded, and along with it, any need for an injunction, there was no other forum or mechanism available to examine the issues that led to injunctive relief. Here, of course, the circuit court still has jurisdiction over the controversy, including any request for an injunction.

11. We realize that this Court has some discretion in deciding whether to dismiss an appeal as moot. *Matthews, supra,* 368 Md. at 96, 792 A.2d 288. We also recognize that we are not bound by *Camenisch.* Nevertheless, the Supreme Court's decision reflects an eminently reasonable approach to the application of mootness principles to an expired preliminary injunction.

## B. Capable of Repetition Yet Evading Review

A limited exception to the mootness doctrine will be found, even if no controversy exists at the moment of review, if the controversy between the parties is capable of repetition, yet evading review. *See State v. Parker*, 334 Md. 576, 584, 640 A.2d 1104 (1994). Outside the context of class actions, this exception is applicable only when (1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.* at 585, 640 A.2d 1104.

Federal courts, when faced with the *Camenisch* scenario of a preliminary injunction expiring on appeal, but a live controversy in the district court, have held this exception to the mootness doctrine to be inapplicable. *See Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1385 (5th Cir.1986)("We recognize the [*sic* ] certain appeals, otherwise moot, may be decided if they involve issues 'capable of repetition, yet evading review.' This principle is inapplicable in those situations in which the issues underlying the moot appeal are *not* moot in the case remaining before the district court." (Emphasis in original.)). *See also Gjertsen v. Board of Election Commrs.*, 751 F.2d 199, 202 (7th Cir.1984) and *Tropicana Prod. Sales, Inc. v. Phillips Brokerage Co.*, 874 F.2d 1581, 1583–84 (11th Cir.1989). In short, a party in this situation still has a forum—the trial court—to press claims mooted on appeal. Thus, such issues would not "evade review". This is particularly true here. Appellants have already presented their First Amendment claim to the circuit court via their motion to dismiss the counterclaim. If Telos persists in its request for a permanent injunction, the Petition Clause issue will have to be resolved and, if appealed, reviewed by this Court. It is difficult to see how the First Amendment issue would "evade review."

Even if we declined to follow this line of federal cases, we believe this mootness exception would not be applicable here. Hamot and Siegel argue that there is a reasonable expectation that Telos will again seek preliminary injunctive relief. In

addition, they contend that the timeframe for reviewing such a preliminary injunction is too short. Finally, they argue that "any future preliminary injunction could likewise 'evade review' by the simple and ... proven expedient of including a 'sunset' provision in the injunction pursuant to which it would expire when Telos files its 2008 Form 10–K with the SEC, currently scheduled for April 15, 2009."

These contentions fail to focus on the "unique factual context," *People for the Ethical Treatment of Animals v. Gittens,* 396 F.3d 416, 424 (D.C.Cir.2005), governing the inquiry of whether there is a reasonable expectation that the same complaining party would be subject to the same action again. *Id.* In the Spring of 2008, when Telos sought its preliminary injunction, it asserted it could not obtain an outside auditor. This was a key component of the circuit court's finding of irreparable harm. *See* p. 358, 970 A.2d 945, *supra.* Apparently, Telos has now been able to engage an auditor, who presumably will continue to be committed to the audit findings that were filed with the SEC in December 2008.

Appellants mischaracterize the "sunset" provision of the June 2008 preliminary injunction as a "simple and proven expedient." Telos' pleadings did not ask for a time-conditioned preliminary injunction. Certainly, the circuit court did not include such a provision in the hope that its order would escape appellate review. Rather, faced with an assertion of irreparable harm keyed to the SEC filing, the court incorporated this limitation into its order. The court surely cannot be faulted for narrowing the scope of its injunction based on the facts before it. Because appellants are the beneficiaries of such a "sunset," should an identical preliminary injunction scenario arise in the future, they could simply request that the court's order not contain such a time limitation.

Hamot and Siegel contend that judicial resolution of a challenge to any renewal of a motion for preliminary injunction could not occur in a timely fashion before another onset of mootness. However, as the Supreme Court noted in *Camenisch,* 451 U.S. at 395, 101 S.Ct. 1830, there are ways to

expedite resolution of preliminary injunction issues and protect against mootness, such as consolidating the hearing on the preliminary injunction with a trial on the merits—a procedure authorized by Md. Rule 15–505(b). Alternatively, the circuit court could condition its entry of a future preliminary injunction on the prevailing party's agreement to expedite any appeal pursuant to Md. Rule 8–207(b).

For all of these reasons, appellants can find no solace in the "capable of repetition yet evading review" exception to the mootness doctrine.

### C. Public Interest

Finally, appellants urge us to exercise our authority to express our views on the merits of a moot case to prevent harm to the public interest. Such authority arises in cases where

> the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest.... If the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight.

*Lloyd v. Bd. of Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954).

Appellants argue in the words of *Lloyd* that resolution of their First Amendment right to petition defense would establish "a rule of future conduct in matters of important public concern," that the subject matter of their defense "will involve a relationship between government and its citizens," and that

the "public interest clearly will be hurt if the question is not immediately decided." *Id.* at 43, 111 A.2d 379.[12]

▇▇▇ At first blush, it appears that Hamot and Siegel overstate their First Amendment claim.[13] Of the seven orders contained in the expired preliminary injunction, six involved appellant-audit communications not connected with the filing

---

**12.** To the extent that the *Lloyd* formulation encompasses elements of the "capable of repetition yet evading review" inquiry, we have already addressed those issues. *See* pp. 364–66, 970 A.2d 948–50, *supra.* Certainly *Noerr–Pennington* cases are not likely to recur frequently in Maryland courts. The doctrine has been cited in only three Maryland appellate cases: two dissents—*Reichardt v. Flynn,* 374 Md. 361, 401, n. 11, 823 A.2d 566 (2003) and *Attorney Gen. v. Anne Arundel Co. School Bus Contractors Assoc.,* 286 Md. 324, 332, 407 A.2d 749 (1979), and one defamation case, since overruled, *Sherrard v. Hull,* 53 Md.App. 553, 561, 456 A.2d 59, *aff'd* 296 Md. 189, 460 A.2d 601 (1983), overruled by *Miner v. Novotny,* 304 Md. 164, 170, 498 A.2d 269 (1985).

**13.** Strictly speaking, we regard appellant's defense as a First Amendment right to petition claim, not an invocation of the *Noerr–Pennington* doctrine. The latter derives from Supreme Court decisions in *E. Railroad Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), statutory construction cases, where the court considered the right to petition in interpreting federal anti-trust laws. The immunity conferred by *Noerr–Pennington* extends to those who "use ... courts to advocate their causes and points of view regarding resolution of their business and economic interests, *vis-a-vis* their competitors." *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 511, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). However, such immunity does not apply if a lawsuit is a sham both objectively and subjectively. *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60–61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). In *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002), the Supreme Court extended the *Noerr–Pennington* doctrine—at least as to direct petitions, *i.e.* lawsuits—to cases under the *National Labor Relations Act,* 29 U.S.C. § § 151 *et seq.* Although the Supreme Court has not spoken on the issue, lower courts, including some state courts, have recognized First Amendment right to petition defenses, similar to *Noerr–Pennington,* to state common law and statutory claims. *See* Annot.: *Application of Noerr–Pennington Doctrine by State Courts,* 94 A.L.R. 5th 455 (2001). Federal courts have wrestled with whether the reach of *Noerr–Pennington* doctrine in antitrust cases is the same in suits brought under the common law or other statutes. *See, e g., Venetian Casino Resort v. NLRB,* 484 F.3d 601, 611–13 (D.C.Cir.2007), and *Cardtoons, L.C. v. Major League Baseball Players Assoc.,* 208 F.3d 885, 889–891 (10th Cir.2000).

of a suit and not affecting a relationship with the government. If Order No. 4 were not included in a future order, any First Amendment petition claims would appear to disappear entirely.

We also note that the June 27, 2008 preliminary injunction does not in express terms bar "direct" petitions, *i.e.* the actual filing of a lawsuit, but would appear to apply to pre-litigation "incidental" activity such as contacting auditors to threaten litigation.[14]   Although to some degree such actions are protected under *Noerr–Pennington, see Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 499, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988), the Supreme Court has not addressed the issue outside the antitrust cases.   Moreover, outside the antitrust context, federal courts are divided on the issue of whether "incidental activity" is protected under the Petition Clause of the First Amendment.   *Compare Cardtoons, L.C. v. Major League Baseball Players Association, supra,* 208 F.3d at 892.   ("A letter from one private party to another private party simply does not implicate the right to petition.") *and Venetian Casino Resort v. National Labor Relations Board, supra,* 484 F.3d at 612 (Incidental activity is not protected by *Noerr–Pennington* if its context and nature make it the type of commercial activity that has traditionally had its validity determined by the antitrust laws themselves.) *with Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 935–36 (9th Cir.2006)(Communication of pre-litigation settlement denial is protected by *Noerr–Pennington* in a civil RICO action.).

In light of this uncertainty in the caselaw, the fact-intensive nature of the sham exception to petitioning activity that Telos has invoked, and the availability of the circuit court to address these issues, we believe that this private litigation between private parties seeking mostly private relief is not the appropriate case that merits judicial review under the public interest exception to the mootness doctrine.   This conclusion

---

14.  Any future injunction should make it clear whether filing suits are excluded or included with the injunction.

is strengthened by the principle that we will not reach a constitutional issue when a case can be properly disposed of on a non-constitutional ground, such as mootness. *See In re Julianna B.*, 407 Md. 657, 667, 967 A.2d 776 (2009).

For all of these reasons, we dismiss the appeal of Hamot and Siegel as moot. Our dismissal of this appeal does not affect the litigation in the circuit court or any final decision on the merits in that court.

**APPEAL DISMISSED AS MOOT. COSTS TO BE DIVIDED EVENLY BETWEEN THE PARTIES.**