## WASHBURNE AND DIRECTOR OF FINANCE, BALTIMORE COUNTY, MD. *v.* HOFFMAN, ET AL., ETC.

## WASHBURNE *v.* DIRECTOR OF FINANCE, BALTIMORE COUNTY, MD.

[No. 219, September Term, 1965.]

*Decided May 26, 1966.*

The cause was argued before PRESCOTT, C. J., and MARBURY, BARNES and MCWILLIAMS, JJ., and EVANS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Jervis Spencer Finney,* for Thomas D. Washburne, one of appellants, and *E. Scott Moore* and *Mrs. Jean G. Rogers,* with whom was *Walter R. Haile* on the brief, for Director of Finance, Baltimore County, Maryland, other appellant, and one of appellees.

*Richard C. Murray* and *John J. Caslin,* with whom was *Donald J. Gilmore* on the brief, for W. Ross Hoffman, et al., constituting the majority members of the Board of Supervisors of Elections for Baltimore County, appellees.

McWILLIAMS, J., delivered the opinion of the Court.

These three appeals are the consequence of a minor skirmish in the perennial conflict between the majority and minority political parties in Baltimore County. The autonomy of the Board of Supervisors of Elections (Board), controlled by appointees of the majority (2 out of 3 members), has been challenged by leaders of the minority. Since the appeals all arose out of the same facts, which, with few exceptions, are not in dispute, we shall treat them as one appeal.

For reasons which have not been disclosed the County Executive (Executive) (a member of the minority) recommended to the County Council (Council) that $440,000 be appropriated for the use of the Board for the fiscal year 1 July 1964 to 30 June 1965. The Council, solidly controlled by the majority (6

out of 7 members) appropriated only $351,000 ($89,000 less than the Executive's recommendation). In December the Board concluded the $351,000 would be exhausted before June. A supplementary appropriation of $77,000 was requested but the Executive approved only $50,000, which the Council (in February) appropriated. Later the Executive claimed he approved the Board's request only after reaching an "understanding" that no more would be required until the end of the fiscal year and that "there would be some curtailment of spending until the 1965-1966 budget funds were available."

The Board says two creditors, whose claims totaled $16,517, had agreed "to wait until after July 1st to receive their money" and that it was "understood" the entire $50,000 would be available for its use and that it "would have been clearly enough to operate on." Later, however, the Board was "officially notified [by the Office of Finance] that the $16,517 had been incumbered for bills that * * * [the parties] had agreed would be paid later." As a result the Board wound up "short the $16,-517."

It seems to be conceded that the Board did curtail its expenditure to some extent. Nevertheless, in April, the Council was persuaded to make an "emergency appropriation"[1] of $16,517 from "available surplus funds." Its action, known as Bill No. 40 (passed by a vote of 6 to 1), was vetoed by the Executive. In his veto message to the Council he suggested that the Board, in by-passing the Executive and going directly to the Council, had shown "nothing but contempt for the budget procedures established under the County Charter." He expressed surprise that the Council "would accede to this request * * * in the light of its possible illegality." He denied the existence of an "emergency" unless it could be said to exist "in the need to apply curbs to the * * * Board's reckless spending for purposes of political patronage." Three weeks later (3 May) the Council, again by a vote of 6 to 1, passed Bill No. 40 over the Executive's veto.

On the day following Thomas D. Washburne (an appellant),

1. Section 712(b) of the Charter of Baltimore County provides, in part, as follows: "(b) Emergency. To meet a public emergency affecting life, health or property, the county council may * * * ."

then (but not now) the minority member of the Board, filed a bill for a decree declaring the action of the Council to be illegal and void and enjoining the payment of any of the funds appropriated by Bill No. 40. The Director of Finance[2] had been withholding payroll checks from Board personnel since 23 April and, of course, continued to do so. Within the week the majority members filed a petition for a writ of mandamus to compel the Director of Finance to make the $16,517 available to the Board. Washburne was granted leave to intervene in the mandamus proceeding.

On 25 May both cases came on for trial and it was agreed, "since the factual situation is the same," that consolidation for trial was proper.[3] Judge Turnbull dismissed the bill in the equity case and granted the writ of mandamus. A week passed. The Director of Finance continued to withhold the paychecks. On 2 June the majority members of the Board filed a petition for the enforcement of the order of 25 May. On the next day Judge Turnbull signed an order directing the Director of Finance to "meet the present payroll * * * [and] the payroll * * * due and owing since 23 April." Also, as part of his order, he expressed the opinion that the case was "not a proper one for a stay of execution." Maryland Rule 817 e. The Director obeyed the order and disbursed the funds to the employees, who, of course, are not parties to this appeal. By 30 June all but $1,285 had been expended. It seems to be conceded that this amount "lapsed into the county treasury" pursuant to section 713 of the Baltimore County Charter.

Washburne appealed from the dismissal of his bill of complaint. The Director of Finance appealed from the granting of the writ of mandamus. Washburne also, as intervenor, appealed from the judgment in the mandamus case. His standing to do so has not been challenged. Neither of the appellants sought

---

2. Appointed by the County Administrative Officer with the consent of the Executive.

3. Maryland Rule 503 expressly does not authorize the consolidation or joint trial of law actions with equity actions, or vice versa. It will be observed, however, that neither the consolidation nor joint trial of such actions is prohibited. In the instant case the court and all parties agreed to the joint trial and it is unchallenged in this Court.

to have these appeals advanced for argument pursuant to Maryland Rule 845 c. Appellees point out that on three occasions they consented to extensions of time (totaling 6 months) for filing briefs.

Why there was no appeal from Judge Turnbull's order of 3 June [4] is not explained and whether, if taken, it would have improved the appellants' position in the instant case is a question we need not consider. That such an appeal is lacking, however, makes our decision virtually inevitable.

In his oral opinion Judge Turnbull concluded the Board was an agency of the State of Maryland and that its activities were not subject to the control of the county government. He thought it unnecessary to decide whether the Council's determination that an emergency existed was reviewable but he found that an emergency did exist. During the trial he excluded proffers of alleged "illegal and wasteful expenditures by the Board." Appellants urge us to appraise Judge Turnbull's rulings (and his final orders as well) and declare them to be erroneous. Appellees, on the other hand, have moved to dismiss the appeal because, they allege, the case has become moot. Appellants disagree but they say, even if the case has become moot, matters of importance and general public interest are involved and, under the rule announced in *Lloyd v. Supervisors of Elections,* 206 Md. 36, 111 A. 2d 379 (1954), the questions presented should be decided. We think *Lloyd* is controlling on both counts and that the appeal should be dismissed.

The language of Judge Hammond, who spoke for the Court in *Lloyd,* seems especially pertinent here:

> "The chronology of the case makes it apparent that nothing this Court could do, by reversal or otherwise, could undo or remedy that which has already occurred. It is beyond our power to make a decision in the case which will bind any of the parties to it or accomplish any of the purposes for which it was brought

---

4. The order declared the case was not a proper one for a stay of execution, held that the Director of Finance had no discretion "to withhold payment of salaries and wages" and required him to make immediate payment thereof.

or defended. The case was moot as to the parties when it reached us. Appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course." *Id.* at 39.

We are fully persuaded it is beyond our power to undo or in any way revise what has already taken place. We could not make a decision which, as far as the parties are concerned, would accomplish any of the purposes for which the litigation was instituted. Appellants argue, however, that a dismissal of the appeal will make Judge Turnbull's decision a precedent which would impair their right, as established in *Gloyd v. Talbott,* 221 Md. 179, 156 A. 2d 665 (1959), to recover against the recipients of the money. As they put it "the right of the County and the taxpayer to recover the funds paid would be foreclosed." While we are confident Judge Turnbull's colleagues on the Baltimore County court, or, indeed, the court of any other county, would consider his decisions very persuasive, we cannot agree that they are in any sense binding. No trial judge is required to abdicate his own individual judgment merely because a colleague of coordinate jurisdiction has enunciated a principle of law which he feels is erroneous. *Brown v. Fidelity & Dep. Co.,* 143 Md. 29, 33, 121 A. 2d 920 (1923) ; 21 C.J.S., *Courts,* § 200 (1940). Whatever the outcome of any attempt to collect from the recipients, the doors of this Court would be open, and we have never considered nisi prius decisions to be anything more than merely persuasive.

In respect of the exception to the general rule of dismissal, we said, in *Lloyd* :

"The courts of other jurisdictions, which recognize the exception, have found difficulty in drawing the line which separates the exception from the general rule of dismissal. Those which we regard as the better considered and reasoned cases take the view that only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding aca-

demic questions. They hold that if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight." 206 Md. at 43.

In *Lloyd* we adapted (without actually adopting) the criteria above set forth to that particular set of facts and we found "none of the imperative and manifest requirements necessary if the Court is to give an opinion when the matter is moot as to the parties before the Court." *Ibid.* If we apply the criteria used in *Lloyd* to the facts in the case at bar we reach a like result.

It cannot seriously be contended that we are concerned with a matter of important public concern. We are not dealing, as we did in *Lloyd,* with a statute. Nothing more important than a single enactment of the legislative body of one county is involved here. The sum of money in dispute is minuscule when contrasted with the total budget of the county. There seems to be no urgency to establish anything, let alone an "imperative and manifest urgency." There has been no showing that "the public interest clearly will be hurt" if we do not decide this case immediately. Indeed, not many of the appeals which come to this Court proceed at a pace quite as leisurely as this one did. If the public's money has been improperly or illegally disbursed suits can be filed to compel its return. Otherwise there seems to be no aspect of the controversy which cannot adequately be dealt with by the General Assembly. If the state government wants the budget of its Board to be subject to the control of the government of Baltimore County it can by statute so provide. In fact, a step in that direction was taken a few years ago when the Board (together with similar agencies) was made "subject to the purchasing laws and regulations * * *

[of the county] now or hereafter in effect." Code, Art. 15 A, § 34 (1963 ch. 701) (1957 Cum. Supp. 1965).

No one has argued, nor even suggested, that this situation is "likely to recur frequently" or at all. Perhaps the fact that (although another fiscal year is about to expire) there has been no recurrence has some significance. We find nothing in this record to indicate it will ever recur. If it does, counsel can surely choose a type of action calculated to bring it to this Court to be passed upon as a live issue.

That the case is moot is obvious. That it does not measure up to the criteria which would justify our dealing with it as an exception, if not obvious, certainly requires no further discussion.

*Appeal dismissed. Costs to be paid by appellants.*