891 A.2d 402

**ALBERT S.**

v.

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE.**

No. 02465, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Feb. 1, 2006.

Sandra T. Brushart, Towson, for appellant.

Daniel R. Malone (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: HOLLANDER, JAMES R. EYLER and KENNEY JJ.

HOLLANDER, J.

This case is rooted in an application submitted by Albert S., appellant, on October 1, 2002, to obtain Medical Assistance benefits based on a disability.[1] After a State Review Team ("SRT") determined that Mr. S. was not disabled, the Department of Health and Mental Hygiene, Baltimore County Department of Social Services ("BCDSS"), appellee, denied Mr. S.'s application. Thereafter, an administrative law judge ("ALJ") held an evidentiary "fair hearing" to review the matter. Instead of resolving the case on the merits, however, the ALJ remanded the matter to the SRT for reconsideration in light of the additional medical evidence presented at the fair hearing.

Unhappy with that disposition, appellant took an appeal to the Board of Review (the "Board") of the Department of Mental Health and Hygiene (the "Department"), which affirmed the ALJ. Mr. S. then sought judicial review in the Circuit Court for Baltimore County. On December 6, 2004, that court dismissed the appeal as moot because, in the interim, appellant had reapplied for Medical Assistance benefits and was found eligible as of October 1, 2003.

On appeal, Mr. S. poses one question:

---

[1]. Pursuant to appellant's confidentiality request, we have omitted any reference to his last name.

Was it error for the Administrative Law Judge to fail to make a Medical Assistance eligibility determination, based upon the testimony and evidence submitted at the hearing, and instead remand the case to the local agency?

Appellee concedes that the ALJ erred. However, BCDSS has moved to dismiss this appeal on the grounds of mootness.[2]

For the reasons that follow, we shall deny the motion to dismiss and reverse the circuit court.

## REGULATORY FRAMEWORK

To understand the issue presented in this case, it is helpful to begin with a brief review of the Medical Assistance program.

Medicaid, also known as Medical Assistance,[3] is jointly funded by the federal and state governments, and provides medical services to low income persons who cannot afford to pay for their own medical care. 42 U.S.C. § 1396; Md.Code (2005 Repl.Vol.), § 15–103(a)(2) of the Health–General Article ("H.G."). The program in Maryland is administered by the Department. *See Dept. of Health & Mental Hygiene v. Campbell,* 364 Md. 108, 112, 771 A.2d 1051 (2001). However, an applicant who seeks benefits must apply through a local department of social services, such as BCDSS. *See* Code of Maryland Regulations ("COMAR") 10.09.24.02B(29) & .04F(1).

The Department has delegated to its local departments, under the supervision of the Maryland Department of Human

---

**2.**  The Public Justice Center, Health Care for the Homeless, Inc., Maryland Disability Law Center, AARP, the Homeless Persons Representation Project, the Civil Advocacy Clinic of the University of Baltimore School of Law, the Health Education Resource Organization, Inc., NAMI Maryland, and Medicaid Matters! Maryland have submitted a joint Amici Curiae brief, urging this Court to rule in favor of appellant. They ask this Court "to find the practice of 'remanding' [Medicaid eligibility] cases ... without resolving the disputed issues unlawful."

**3.**  In Maryland, Medicaid is known as "Medical Assistance." *See* Md. Code (2005 Repl.Vol.), Health–Gen. § 15–103(a)(1); Code of Maryland Regulations 10.09.24.02B(32),(33). Like the parties, we shall use these terms interchangeably.

Resources ("DHR"), the authority to determine eligibility for Medicaid benefits. COMAR 10.09.24.02B(29) & .04A. To qualify, an applicant must satisfy the criteria for an eligibility category, such as "Aged, Blind and Disabled" or "Family and Children." COMAR 10.09.24.04M(3), .06 & .06B. An individual who applies for Medicaid based on a disability must satisfy the disability standard set forth in the federal Supplemental Security Income Program. COMAR 10.09.24.05E (2)(b),(c); COMAR 10.09.24.04M(3).

"Disabled" is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 Code of Federal Regulations ("C.F.R.") § 416.905(a); see COMAR 10.09.24.02B(19). When an applicant for Medicaid benefits alleges a disability, the Family Investment Administration ("FIA") of DHR employs physicians and disability specialists, known as the State Review Team, to assist local departments in determining eligibility. COMAR 10.09.24.05E (2); COMAR 07.03.05.02B(21). In addition, an applicant must satisfy strict income requirements to qualify for disability-related Medicaid.[4]

If an application is denied, the applicant has a right to request a fair hearing. 42 C.F.R. §§ 431.200(a) & 431.220(a)(1); COMAR 10.01.04.02A & 10.09.24.12A. The Department has delegated to the Office of Administrative Hearings ("OAH") the authority to hold "fair hearing" appeals under the Medicaid program. See COMAR 10.01.04.04A.[5] The hearing is governed by the contested case provisions of the

---

4. To be eligible in Maryland, an individual's income may not exceed $350 per month, while a family of four may not exceed $475 in monthly income. COMAR 10.09.24.07N.

5. The federal Medicaid regulations require states to provide for one of two "fair hearing" systems. 42 C.F.R. § 431.205. Maryland has opted to provide for "[a]n evidentiary hearing at the local level, with a right of appeal to a State agency hearing." 42 C.F.R. §§ 431.205(b)(2) & 431.233(a). The evidentiary hearing before OAH is the "fair hearing."

Administrative Procedure Act, Md.Code (2004 Repl.Vol.), State Government Article ("S.G.") § 10–222; *see* COMAR 10.09.24.13A(1)(a); 10.01.04.02A. Accordingly, the parties may present and cross-examine witnesses, introduce documentary evidence, and argue their respective positions. 42 C.F.R. § 431.242; COMAR 10.01.04.06. In turn, the ALJ's decision is based "exclusively" on the evidence presented at the hearing. 42 C.F.R. § 431.244(a); COMAR 10.01.04.08A. Notably, the ALJ's decision is final and binding on the Department. COMAR 10.01.04.08C(1).

A person who is found ineligible for Medicaid benefits after a fair hearing may seek further administrative review by the Board. H.G. § 2–207(a); COMAR 10.01.04.08C(1). The Board hears cases based on the record of the fair hearing, supplemented with argument of the parties. COMAR 10.01.05.06A & .09A(1). The Board's decision constitutes the Department's final decision for purposes of judicial review under the Administrative Procedure Act. *See* S.G. § 10–222; H.G. §§ 2–207(f)(2), 2–207(h); *Leatherbury v. Gaylord Fuel Corp.*, 276 Md. 367, 374, 347 A.2d 826 (1975).

### FACTUAL AND PROCEDURAL SUMMARY

Mr. S. was born in 1956. He suffers from a variety of health problems, including an injury to his right ankle, a burn to his left hand, hypertension, diabetes, arthritis, and depression. Mr. S. is also unable to use his left hand due to a condition called "contracture," which renders his hand immobile.

In January 2001, appellant left his employment because of the burn to his hand. In November 2001, Mr. S. broke his ankle and again left the workforce. Lacking health insurance or any income stream, Mr. S. was unable to obtain physical therapy for his ankle and hand, nor could he pay for medical care needed for his diabetes and hypertension.

On October 1, 2002, Mr. S. applied for Medicaid under the Aged, Disabled and Blind category as a household of one. To complete his application, Mr. S. submitted to BCDSS a Medi-

cal Report Form 402B and a Medical Assistance Program Vocational, Educational and Social Data Form 4204. Form 402B was completed on February 20, 2003, by Dr. Deepak Seth, Mr. S.'s treating physician since August 2001. Dr. Seth diagnosed Mr. S. with "hypertension," "contracture flexion of [the] hand," and "peripheral neuropathy."

The Form 402B indicated that Mr. S. was taking blood pressure medication that caused "weakness" and "dizziness." With regard to "the patient's ability to perform during an 8–hour workday with normal breaks," Dr. Seth indicated the following physical limitations: Mr. S. could sit for four hours; stand for one hour; walk for one hour; and could "never" climb, carry, bend, or squat. In response to the query whether Mr. S. could use his hands "for repetitive action," Dr. Seth checked the "No" column on the form for each of the three specified hand actions: "simple grasping," "pushing and fine," or "manipulation." The form also asked: "Based on your evaluation has your patient's medical condition lasted or can it be expected to last at least 12 months?" Dr. Seth checked the "Yes" box. Notably, Dr. Seth also checked the "Yes" box in answer to the following inquiry: "Does the patient's medical condition prevent them from working?" He specified the duration of Mr. S's inability to work as lasting from February 21, 2003, to February 20, 2004.

On or about May 5, 2003, BCDSS notified Mr. S. that the SRT found him ineligible for Medicaid benefits, because it determined that he did not have a disability. According to the SRT, appellant was capable of employment as an appointment clerk, telephone operator, or receptionist. Mr. S. filed an appeal on June 23, 2003, which led to the evidentiary fair hearing conducted by the ALJ on August 19, 2003.

At the hearing, Mr. S. testified regarding his ankle fracture, hypertension, hand injury, peripheral nerve problems, diabetes, and severe pain that interferes with his sleep and activities. He also testified that, because of his ankle injury, he is only able to walk a few steps at a time and sometimes uses a walker. He introduced his Form 402B and Form 4204, as well

as medical records documenting his clinical depression. A representative of BCDSS testified that the agency had received updated information and that the SRT was reconsidering Mr. S.'s eligibility. However, BCDSS did not offer any medical evidence to contradict Mr. S.'s claim of disability.

On September 22, 2003, the ALJ issued his decision, in which he made general findings of fact but failed to make any findings of fact regarding the import of the medical evidence. The ALJ noted, in part:

> The Appellant has provided additional information to the local department which has not yet been considered by the SRT, including: (a) updated medical report forms (Form 402B); (b) updated vocational, educational and social data (Form 4204); (c) medical progress notes from July 8, 2003 through August 18, 2003; and (d) emergency room records from July 18, 2003.

According to the ALJ, the SRT has the statutory authority to review and consider the updated medical evidence. Instead of resolving the question of appellant's eligibility for Medicaid based on a disability, the ALJ remanded the case to enable SRT to consider the medical evidence submitted at the hearing. The ALJ reasoned that "[t]he members of the SRT are the proper persons to make disability determinations, and they must be given an opportunity to review all medical information submitted by an applicant." Further, the ALJ said:

> These COMAR regulations provide that the SRT *shall* review "the medical report and other evidence" and determine whether an individual is disabled. (Emphasis added [by ALJ]). This review *shall* be conducted by a team "composed of a medical or psychological consultant and other individual who is qualified to interpret and evaluate medical reports and other evidence relating to the individual's physical or mental impairments ..." (Emphasis added [by ALJ]). This scheme clearly anticipates that a SRT team comprised of qualified individuals review the medical records of a person applying for [medical assistance].

The medical records submitted to the local department by the Appellant at the hearing have not been reviewed by the SRT. The regulations mandate that a SRT team members [sic] be given the opportunity to "interpret and evaluate" those records as required by the above-cited COMAR regulation. COMAR 10.09.24.05E(2)(c). Testimony was also allowed regarding the Appellant's limitations, but these limitations are best considered by the SRT, which is charged with making a disability decision in this case. This is particularly true when the SRT has not been given all of the data from which a decision can be made.

... In his closing argument, the local department's representative argued that the case be remanded to the SRT for review of the new information presented. After reviewing the law in this case, I agree with the local department that this matter must be remanded to the SRT.

On or about September 30, 2003, the SRT found that Mr. S. was not disabled. According to appellant, he "was without access to critical medical care from October 2002 to October 2003."

On October 2, 2003, Mr. S. noted his appeal of the ALJ's decision to the Board. In the meantime, on October 23, 2003, Mr. S. also submitted a new application for Medicaid. In December of 2003, BCDSS notified Mr. S. that he was found eligible for benefits, retroactive to October 1, 2003. The record indicates that appellant has continued to receive Medicaid benefits since October of 2003. Although appellant's benefits were not made retroactive to the date of his first application for Medicaid, his unpaid bills apparently were "written off as charity care...."

With regard to the initial denial of Medicaid benefits, the Board held a hearing on February 26, 2004. Mr. S. argued that the ALJ's remand to the SRT violated federal law. On March 9, 2004, the Board ordered:

That the decision of the Administrative Law Judge of the Office of Administrative Hearings to Remand be **AFFIRMED** and the Board hereby recommends that the case

be remanded to the SRT consistent with the Administrative Law Judge's decision.

On April 7, 2004, Mr. S. sought judicial review in the Circuit Court for Baltimore County. At the hearing on September 14, 2004, the agency agreed with appellant that the ALJ erred by failing to decide the merits of whether appellant was disabled and by remanding to the SRT. However, appellee claimed that, given the subsequent award of benefits to Mr. S., the matter had become moot. Mr. S. disagreed. The following exchange is pertinent:

[COUNSEL FOR APPELLANT]: ... Your honor, this case involves an issue of great public importance which affects many people in Maryland. Because of the prolonged appeal procedure involved in this kind of case this problem of case review is unlikely to reach the court as a live case, a case in which needed Medical Assistance benefits have not been granted.

Albert [S.] is before this court because he suffered a number of disabling conditions without access to needed medical care. For over a year after the date that he applied for Medical Assistance he was unable to receive the medical treatment that he desperately needed and was forced to wait additional months in getting access to the needed insurance to treat his diabetes, hypertension, contracted left hand and injured right ankle because the administrative law judge failed to make a final decision in his Medical Assistance appeal.

This hearing took place over a year ago. We are now in court over a year later on an appeal of this particular case. The Department has argued, what is there to be gained at this point because, after all, my client has Medical Assistance, and it doesn't matter at this point.

I suggest to you, Your Honor, that this case is of extreme importance because it is a situation that is repeated time and time again, and it is one that is of great public importance and does meet the criteria set forth in the Maryland

Court of Appeals case that sets forth factors that one can look to to overcome the mootness issue.

\* \* \*

... Your Honor, at this time I'm asking that the court acknowledge that, first of all, federal law requires that the administrative law judge render a decision on Mr. [S.'s] application rather than remand the case for a new eligibility determination.

Number two, I'm asking that Your Honor find that Maryland is required to comply with federal law in administering the Medical Assistance program. Federal provisions assure a public benefits applicant a final decision resulting from a fair hearing.

I'm also asking that Your Honor find that there was sufficient evidence before the administrative law judge to render a decision on Mr. [S.'s] application, and, finally, because of the important public interest at stake and the likelihood of reoccurrence, the court should rule on the merits of this case even though Mr. Mr. S. was eventually granted Medical Assistance benefits.

\* \* \*

... Both the federal regulations and COMAR state that there must be a final decision within 90 days of the appeal, and a final decision is not a remand to the State Review Team or any other body for a review of the initial application.

[THE COURT]: What authority do you have for that?

\* \* \*

[COUNSEL FOR APPELLANT]: 42 C.F.R. 431.244(a).... It requires a hearing decision to be based exclusively on evidence introduced at the hearing. Also, 42 C.F.R. 431.232(c). There is a Maryland decision which states that an ALJ should not simply review the decision of the local department, and that is found at *Halle Company*

*[Companies] v. Crofton Civic Association,* 339 Md. 131 [661 A.2d 682]. These are all cites from Page Seven of my initial memorandum.

[THE COURT]: Okay.

[COUNSEL FOR APPELLANT]: In that case there is a holding that de novo appeals are wholly original proceedings; not a review of the action of the lower decision maker.

I think that one of the most important forms of guidance comes from the State Medicaid Manual. . . . The State Medicaid Manual guides the procedures that Maryland must follow as it administers this partnership program between the federal government and the state government. It specifies, quote, remanding the case to a local unit for further consideration is not a substitute for definitive and final administrative action.

And, Your Honor, it's my position that the case cannot be remanded for a decision.

Counsel for appellant conceded that there are limited circumstances when a remand to SRT would be appropriate. He asserted:

The only circumstances which we would concede might require a remand is if the Administrative Law Judge found that there was contradictory medical evidence or insufficient medical evidence and there needed to be further development of medical evidence.

It is certainly possible that the Administrative Law Judge might want to remand a case for a consultative examination, if that is warranted, and I believe that is a position that the Department agrees with. There are some limited circumstances in which you might remand a case for that specific development.

However, that was not the case in Mr. [S.'s] presentation, There was no evidence or no indication throughout the course of the hearing or anything reflected in the decision of the administrative law judge that the reason that the case was remanded was for further medical development. The ALJ took the position that he didn't have the authority to

make a decision, and that the State Review Team would have to review the information.

The following exchange helps to illuminate the issues:

[THE COURT]: Let me interrupt you one second. When was the first application? When did Mr. [S.] file the first application for benefits?

[COUNSEL FOR APPELLANT]: His first application that I'm aware of was made on October the 1st, 2002.

[THE COURT]: The second one was October 23rd, '03?

[COUNSEL FOR APPELLANT]: That's correct.

[THE COURT]: So, when he was approved the second time, that's not retroactive, I guess.

[COUNSEL FOR APPELLANT]: No, it is not, although it is my understanding in talking to my client recently that the bill that was in question, the Bayview bill, has either been written off as charity care or is not being pursued.

[THE COURT]: *He isn't on the hook for anything in the intervening period of time?*

[COUNSEL FOR APPELLANT]: *Not to my knowledge,* but the reason I'm here today though, Your Honor, is because I have a very large Medical Assistance practice, and we find time and time again that *the administrative law judges do not take a fresh look. Do not provide the de novo review which federal law requires.*

*They are simply remanding the cases back to the State Review Team for a redetermination,* and this causes great delay, usually, a month or two or more and then the client is faced with the possibility of having to appeal once again, which is usually another several months. So you're talking about a five month delay potentially in a case that is remanded to the State Review Team.

Administrative law judges are in a position to review medical evidence. It's simply a question of looking at the medical evidence, applying the facts of the situation to the standard which they should be familiar with. It's the Social Security Sequential Evaluation Standard. Lawyers and

paralegals do this all the time. It does not require a doctor to review medical evidence.

\* \* \*

And, clearly, the Administrative Law Judge in this instance, if he had listened to the testimony and been willing to consider it and to go through that five step sequential evaluation, which is described in my memorandum, *he should have come to the conclusion that my client was disabled, and, as a result, my client would have been able to receive Medical Assistance for his problem.*

[THE COURT]: Okay. All right. I think I get the gist of your argument. Let me ask you a question. You're asking me to remand it back to the ALJ?

[COUNSEL FOR APPELLANT]: No, Your Honor. Actually, I'm asking you to find that based on the record that he is disabled. He was disabled for that period of time of October 2002 through September of 2003.

[THE COURT]: *If I find he's disabled, that really doesn't get to your main issue, which is whether the ALJ can do what he or she did.*

[COUNSEL FOR APPELLANT]: *You're correct. The most important, I believe, decision to be made by Your Honor is whether or not an ALJ must make a final decision—go through a de novo review where evidence is considered by the administrative law judge and a final decision made by that individual. The most important issue here is the federal and state obligation of the administrative law judge to consider the evidence before him or her.*

[THE COURT]: In other words, you want me to rule that the ALJ should have made a final decision and then I should make a final decision—

[COUNSEL FOR APPELLANT]: Yes, Your Honor.

[THE COURT]:—as to disability?

[COUNSEL FOR APPELLANT]: Yes. Although I realize this is not controlling, I would let Your Honor know that

this is a very common problem, the failure of the administrative law judge.

\* \* \*

[COUNSEL FOR APPELLANT]: [A] finding that, in fact, the administrative law judge had to make that final decision and should not have remanded the case to the State Review Team would be very significant and impact, I believe, the practice of the agency.

\* \* \*

[COUNSEL FOR APPELLEE]: ... Your Honor, I believe the longitudinal record and the memorandum of law that the Department filed in this case will indicate that *the Department does not disagree in principle with just about everything that counsel for appellant has brought before the court today. Where we do disagree is we don't think this is the rare instance or the compelling circumstance that the court needs to rule on a case that we argue is moot.*

\* \* \*

As an attorney who goes before the Board of Review, that is the position. *The Department has administrative law judges who must hear the case and must not remand the case back to the State Review Team if there is sufficient evidence for the administrative law judge to make his or her determination on disability.*

*But we find that this case is moot because the appellant or the petitioner has been determined disabled. He's getting benefits. We hear today from petitioner's counsel that there is no outstanding monetary benefit to be gained by any opinion of the court today.*

Petitioner argues or asks for four kinds of relief from the court. To acknowledge that under federal law that administrative law judge is to render a decision. The Department accepts that.

Petitioner asks that the Maryland [sic] is required to comply with federal law. The Department accepts that and has always accepted. That it was just in the interpretation of the federal law that the Department strayed.

The petitioner asks that the court find that there was sufficient evidence to render a decision. That would be for the court to do. I have no opinion on that, and we don't agree that the court should rule on the merits of case. [sic]

*We just believe it's a moot case. He has his disability. The Department understands, and the Office of Administrative Hearings understands ALJs are to render decisions of disability and not to remand the cases back to the State Review Team.*

(Emphasis added).

On December 6, 2004, the circuit court dismissed Mr. S.'s petition as moot. In its Memorandum and Order of Court, it said:

Petitioner alleges that he was denied a fair hearing required by federal and state law when the ALJ remanded Petitioner's case back to the SRT for consideration of additional evidence rather than rendering a final administrative decision. At the hearing of September 14, 2004 held before this court, [appellee] conceded that the ALJ ought to have rendered a decision rather than remand this particular case to the SRT for consideration of new medical evidence not previously considered. [Appellee] also conceded that Maryland law mirrors the federal scheme with respect to the procedures that hearing judges must follow in adjudicating medical assistance cases. Presumably, this concession implies that the fair hearing procedures under 42 CFR 431.232 and COMAR 10.01.04.01 et seq. are equivalent, and that the ALJ ought to have held a de novo hearing, and heard the additional evidence, rather than remand it to the SRT for additional consideration.

There is no longer an actual controversy between the parties because the positions of the [appellee] and the [appellant] are the same in that *both parties have agreed*

*that the ALJ was required to render a final decision on the merits rather than remanding the case.* In addition, the Petitioner has since been found to be eligible to receive medical assistance benefits and has received all the benefits for which he originally applied. For these two reasons, the case has become moot since there is no longer an effective remedy that this court can provide.

Despite being moot, Petitioner urges the court to adjudicate this appeal on the merits citing *J.L./Matthews, Inc. v. Maryland[-]National Capital Park and Planning Commission,* 368 Md. 71, 96–97 [792 A.2d 288] (2002) quoting *Lloyd v. Board of Supervisors of Elections,* 206 Md. 36, 43 [111 A.2d 379] (1954). The factors set forth in *J.L./Matthews,* when applied to the case *sub judice,* do not concur with sufficient weight to warrant an adjudication on the merits.

(Emphasis added).

We shall include additional facts in our discussion.

## DISCUSSION

### I.

◼ Preliminarily, appellee urges us to dismiss the appeal as moot, because appellant has no financial exposure, he now receives Medicaid, and "[t]he Department and Mr. S. agree that the administrative law judge erred when he failed to decide Mr. S.'s eligibility after a fair hearing in September 2003." According to appellee, because the "parties agree on the regulations and their interpretation ... there is no legal question affecting the public's interest for the Court to decide." Further, appellee insists that appellant has not shown that "the issue is likely to recur frequently for other Medicaid applicants or recipients." Appellee adds: "Because the Department agrees with Mr. [S.] on the sole issue in this case, there is no controversy before this Court. Accordingly, the circuit court's decision dismissing the case should be affirmed."

Appellant urges us to reach the merits, claiming that this case "involves a recurring issue of great public importance that evades review but that affects many public benefits recipients in Maryland." Further, he contends:

This is not an isolated case. Despite the fact that the Department has conceded the illegality of the practice, ALJs in Maryland routinely remand Medical Assistance disability cases to the SRT and local departments, rather than rendering a decision on the merits.

We agree with appellant that the substantive issue, while moot, is worthy of our consideration because of its public importance and because the issue could evade judicial review. We explain.

It is well established that a controversy generally is not justiciable if it has become moot. *Stevenson v. Lanham,* 127 Md.App. 597, 612, 736 A.2d 363 (1999). The Court of Appeals noted long ago:

The American doctrine of judicial review may be considered as a correlative to the doctrine of the separation of powers, and must always be exercised with due regard to the legislative prerogative. There are a number of subordinate rules that tend to limit the scope of review, among the most important of which are the presumption of constitutionality and the rule that *courts will not decide moot or abstract questions,* or, in the absence of constitutional mandate, render advisory opinions.

*Hammond v. Lancaster,* 194 Md. 462, 471, 71 A.2d 474 (1950) (citation omitted) (emphasis added).

"A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy." *Coburn v. Coburn,* 342 Md. 244, 250, 674 A.2d 951 (1996); *see Hill v. Scartascini,* 134 Md.App. 1, 4, 758 A.2d 1087 (2000). As a general proposition, "appeals which present nothing else for decision are dismissed as a matter of course." *In re Riddlemoser,* 317 Md. 496, 502, 564 A.2d 812 (1989). This is because any decision as to such an issue would amount to an

academic undertaking; appellate courts "do not sit to give opinions on abstract propositions or moot questions." *Id. See generally Board of Physician Quality Assurance v. Levitsky,* 353 Md. 188, 200, 725 A.2d 1027 (1999); *Mercy Hosp., Inc. v. Jackson,* 306 Md. 556, 562, 510 A.2d 562 (1986); *Atty. Gen. v. Anne Arundel Co. Sch. Bus Contractors Ass'n,* 286 Md. 324, 327, 407 A.2d 749 (1979); *Hayman v. St. Martin's Evangelical Lutheran Church,* 227 Md. 338, 343, 176 A.2d 772 (1962); *Committee for Responsible Development on 25th Street v. Mayor of Baltimore,* 137 Md.App. 60, 69, 767 A.2d 906 (2001); *Wankel v. A & B Contractors, Inc.,* 127 Md.App. 128, 171–72, 732 A.2d 333, *cert. denied,* 356 Md. 496, 740 A.2d 614 (1999).

The doctrine of mootness is not without exceptions, however. Indeed, "on rare occasions, we reach issues that are otherwise moot." *Beeman v. Department of Health & Mental Hygiene,* 105 Md.App. 147, 158, 658 A.2d 1172 (1995); *see J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Comm'n,* 368 Md. 71, 96–97, 792 A.2d 288 (2002); *In Re Justin D.,* 357 Md. 431, 444–45, 745 A.2d 408 (2000); *State v. Parker,* 334 Md. 576, 584, 640 A.2d 1104 (1994); *Bond v. Slavin,* 157 Md.App. 340, 354, 851 A.2d 598 (2004).

In *Lloyd v. Bd. of Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954), the Court articulated the standard by which moot cases may be addressed:

[O]nly where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions.... [I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between the government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all of these factors concur with sufficient weight.

This test was applied by the Court of Appeals in *In Re: Joshua R.*, 357 Md. 431, 745 A.2d 408 (2000). In that case, the juvenile court entered written orders regarding parental visitation that could have been read as delegating to the Department of Social Services the authority to determine whether to allow visitation and, if so, when, where, and how it was to occur. *Id.* at 434, 745 A.2d 408. Because these orders were superseded, and were no longer in effect when they were appealed, the Court concluded that the matter was moot. *Id.* at 444, 745 A.2d 408. Nevertheless, the Court elected to reach the merits of the issue because of the frequency with which such orders are entered, the likelihood that they would evade review by becoming moot before the Court would have an opportunity to consider them, and the important public concern. The Court reasoned, *id.* at 444, 745 A.2d 408:

> [I]t is common practice for the juvenile court in Montgomery County to enter orders of this kind, so the issue presented by appellants is a recurring and important one. With periodic six-month review, orders of this kind that are appealed will almost always be replaced by subsequent orders before this Court will have the opportunity to review them. We have recognized a very limited exception to the mootness doctrine in this kind of situation. . . .

*In Re Adoption/Guardianship No. 93321055/CAD*, 344 Md. 458, 687 A.2d 681 (1997), is also instructive. In that case, the Court resolved a moot question concerning the trial court's authority to consider a belatedly filed objection to a petition to terminate parental rights. *Id.* at 465, 687 A.2d 681. The Court underscored that while it has the authority to address moot questions, it exercises "that authority 'only in rare circumstances which demonstrate the most compelling circumstances.' " *Id.* at 488, 687 A.2d 681 (citation omitted). However, the Court chose to address the contention because the matter was "obviously of considerable public importance," it was likely to recur due to the large number of parental termination cases filed each year, and it presented "an important and dramatic conflict between the government" and the

citizens' fundamental rights as parents. *Id.* at 488–89, 687 A.2d 681.

We are also guided by the case of *Katsenelenbogen v. Katsenelenbogen*, 365 Md. 122, 775 A.2d 1249 (2001), which helps to illuminate the "public interest" exception. That case arose from a domestic violence dispute. The circuit court entered a protective order, which this Court vacated on appeal; we remanded the matter for further consideration of whether the order was appropriate. *Katsenelenbogen v. Katsenelenbogen*, 135 Md.App. 317, 762 A.2d 198 (2000). By the time the case reached the Court of Appeals, it had become moot, because the protective order had expired by its own terms. *Katsenelenbogen*, 365 Md. at 125, 775 A.2d 1249. Nevertheless, the Court of Appeals recognized that the case concerned a matter of public importance that warranted the Court's consideration, despite the mootness. *Id.* In particular, the Court expressed concern that this Court's decision could "be construed as weakening the State's effort to respond aggressively to incidents of violence in the home and frustrating the important objectives of the State's domestic violence law." *Id.*

■ Ordinarily, then, a case that has become moot "will be dismissed without a decision on the merits of the controversy unless it presents 'unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct,' or the issue presented is 'capable of repetition, yet evading review.' " *Stevenson v. Lanham*, 127 Md.App. at 612, 736 A.2d 363 (citations omitted). This is such a case.

According to appellee, ALJs do not "routinely" and improperly remand these determinations. From this record, however, we cannot determine the frequency with which ALJs remand the Medicaid disability cases. Notably, while the Department seems to suggest that any error here was an isolated occurrence, it was the agency's own lawyer who, at the fair hearing, encouraged the ALJ to remand to the SRT for further consideration. Nor have we uncovered any reported opinion in this State that addresses the issue presented

here.[6] Clearly, in addressing the issue, our opinion will help to educate counsel as well as the ALJs.

In addition, this case obviously involves "a relationship between government and its citizens, or a duty of government...." *Lloyd,* 206 Md. at 43, 111 A.2d 379. To be sure, the public importance of the issue cannot be overstated. Noting the impact of the procedural error upon indigent applicants, the amici emphasize as "manifold" the "importance of the fair hearing decision-maker reaching a decision on the merits...." Amici assert:

> This practice of "remanding" causes real harm to indigent individuals with disabilities. While applications are delayed for many months, these vulnerable individuals may have to delay or forego necessary medical care, incur financial debt, and sacrifice other necessities like food and rent to try to pay for medical care.

The amici further elucidate the hardship caused by unlawful and undue delay that results when the ALJ fails to render a decision. They state:

> Any undue delay in the processing of Medicaid applications or in the resolution of disputes over Medicaid eligibility is irresponsible to individual applicants, to the Medicaid program, and even to society as a whole. The provision of early Medicaid services prevents higher costs associated with untreated chronic conditions.

*   *   *

> Applicants for benefits like Medicaid are unavoidably in [a] desperate situation.... [A]n *applicant,* like Mr. S., must simply wait, perhaps months, for the determination of whether the benefits can *begin.* Therefore, timely and accurate decisions on applications, and prompt resolution of disputes over eligibility for benefits, are essential to prevent

---

6. At the hearing below, the parties discussed another proceeding in the circuit court involving another recipient, in which another ALJ had also failed to decide the case. The circuit court reversed. No appeal was noted from that ruling, however.

unnecessary harm. In the instant case Mr. S.'s original application for Medicaid was denied by the local agency and he appealed the decision. Instead of resolving the dispute over eligibility, the ALJ "remanded" the case to the local agency which again . . . denied the application for a second time. Mr. [S.] was then forced to file yet another application which the local agency was required to process, for the third time, to determine whether he met the disability standard. *He was determined eligible during the last evaluation but went without medical coverage for an entire year while this process unfolded. The fair hearing process and subsequent judicial review are designed to be the mechanism by which the accuracy of agency decisions are checked, and if need be, promptly corrected.*

(Emphasis added).

Because there is no reported case in Maryland that elucidates the issue presented here, and because the matter is one of obvious importance to many members of society, such as Mr. S., we believe it is appropriate for us to reach the merits, to ensure that Medicaid applicants receive prompt and proper administrative review of SRT determinations when sufficient medical evidence is presented to an ALJ. We turn to address the merits.

## II.

States participating with the federal government in the Medicaid program are required to provide applicants who have been denied benefits an opportunity for a fair hearing and a final decision of the matter. *See* S.G. § 10–222; 42 C.F.R. §§ 431.200(a), 431.220(a)(1), 431.244, 431.245. These provisions include the opportunity to present and cross-examine witnesses and the right to a decision that includes findings of fact and conclusions of law. COMAR 10.01.04.03, .06, and .08. Federal and state regulations further require that, upon consideration of all of the evidence presented at a fair hearing, the ALJ must render a final decision as to a person's eligibili-

ty for Medicaid. S.G. § 10–221(b)(1); COMAR 10.01.04.08, .08A, & .08C1; COMAR 10.01.04.02.

There is no dispute here as to the adequacy or sufficiency of the evidence in regard to appellant's disability. The ALJ stated that the SRT "are the proper persons to make disability determinations." COMAR 10.09.24.05E(2). Apparently, the ALJ did not know that, once an applicant contests the determination of the SRT, it is the ALJ's responsibility to render a final decision in the matter, assuming the sufficiency of the evidence. 42 C.F.R. §§ 431.200(a), 431.220(a)(1), 431.244, & 431.245; COMAR 10.01.04.02, .08A, & .08C1.

█ The Centers for Medicare and Medicaid Services ("CMS") is the federal agency that oversees the Medicaid program and provides guidance to the states on the regulatory requirements for hearings. Formerly known as the Health Care Financing Administration, CMS publishes a State Medicaid Manual, which "is an official medium by which [CMS] issues mandatory, advisory, and optional Medicaid policies and procedures to the Medicaid State agencies." CMS State Medicaid Manual, Publication # 45 ("CMS–PUB45"). CMS's interpretation of its regulations is accorded "controlling weight unless plainly erroneous or inconsistent with the regulation." *State v. Shalala*, 42 F.3d 595, 598 (10th Cir.1994). It is CMS's general policy that "[a] conclusive decision in the name of the State Agency shall be made by the hearing authority," and that "[r]emanding the case to a local unit for further consideration is not a substitute for 'definitive and final administrative action.' " CMS–PUB45.

Furthermore, the Department's Medicaid fair hearing regulations require an ALJ to issue a final judgment that is "final and binding upon the Department and the delegate agency." COMAR 10.01.04.08C(1). Appellee concedes:

In accordance with CMS's interpretation of the federal fair hearing regulations, the Department interprets its own fair hearing regulations as proscribing administrative law judges from remanding cases to county departments for the pur-

pose of reconsidering questions of disability and Medicaid eligibility.

Accordingly, we agree with the parties that the ALJ erred at the fair hearing review by remanding to the SRT, because sufficient medical evidence was presented to the ALJ with respect to the alleged disability. Given the sufficiency of the medical evidence, it was the ALJ's obligation to render a decision on the merits of appellant's application for Medicaid based on a disability.

**APPELLEE'S MOTION TO DISMISS APPEAL IS DENIED. JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; COSTS TO BE PAID BY APPELLEE.**